ROBERT J. MONAHAN & others[1] vs. TOWN OF METHUEN
& others.[2]

Essex. May 7, 1990. - August 21, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Massachusetts Tort Claims Act. Statute*, Construction. *Fire Fighter*, Incapacity, Municipality's liability. *Governmental Immunity. Negligence*, Causing loss of consortium, Municipality. *Actionable Tort. Parent and Child*, Companionship and society, Consortium. *Contract*, Parties.

A fire fighter who had already recovered, and will continue to recover, benefits under G. L. c. 41, §§ 100 and 111F, for incapacitating injuries sustained in the performance of his duty, was barred from recovering damages from his municipal employer under the Massachusetts Tort Claims Act, G. L. c. 258. [385-388]

The parents of an adult son had no right to recover for loss of the son's companionship and society (consortium) through a defendant's negligence, where their son was not dependent on them financially either before or after the accident from which the son's injuries arose. [388-390]

Claims for mental anguish and for nursing and other caring expenses incurred by the plaintiffs in a negligence action, which were not addressed by the defendant on appeal from denial of its motion for summary judgment, were allowed to go forward. [390]

Dismissal of a claim seeking damages for breach of an employment contract was proper where the particular claim represented an attempt to recast an already rejected tort claim into a contract claim; furthermore, a second claim that, as a result of the alleged breach of contract, other plaintiffs were entitled to consequential damages resulting from loss of consortium and mental anguish was also properly dismissed. [390-391]

Individual municipal employees were immune from personal liability on a claim under G. L. c. 258, the Massachusetts Tort Claims Act, arising out of alleged gross negligence, where such a claim qualified as a "negligent or wrongful act or omission" under c. 258, § 2. [391-392]

---

[1]Eileen G. Monahan and Robert F. Monahan.

[2]William Gallagher, Richard M. Gladstone, Joseph J. Nicolosi, and Anthony Franciosa.

CIVIL ACTION commenced in the Superior Court Department on March 4, 1987.

Motions to dismiss and for summary judgment were heard by *Mary McCauley Manzi*, J., sitting under statutory authority; additional motions for summary judgment and a motion for reconsideration were heard by *John P. Forte*, J., also sitting under statutory authority.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William Lafferty* for the plaintiffs.

*Maurice J. Lariviere, Jr.*, Town Counsel, for the defendant.

LIACOS, C.J. The plaintiff Robert J. Monahan was a full-time fire fighter employed by the Methuen fire department. On March 26, 1986, he was on duty with his scheduled shift, which began at 5 P.M. and ended at 7 A.M. the following morning. At approximately 9:30 on the evening of March 26, Monahan and other fire fighters reported to a fire at a building in Methuen, which they fought until approximately 12:30 A.M. On his return to the station, he performed various fire fighter duties, such as reloading the fire trucks.

At approximately 3 A.M., Monahan, along with another fire fighter, climbed the hose drying tower at the fire station for the purpose of hanging the fire hose to dry. While in the process of hanging the hose, Monahan fell from the tower platform through the entrance hole of the platform, bounced off a door, and fell through a trap door of the first floor, after which he landed on the concrete basement floor below. He fell a distance of approximately fifty-five feet. Monahan's physical injuries included two broken legs, a broken right knee, dislocation of the left knee, multiple skull fractures, facial bone breaks, deafening of the left ear, and scarring.

Monahan was given emergency treatment by emergency medical technicians and was taken to Bon Secours Hospital where he underwent emergency surgery. Monahan's mother and father, the plaintiffs Eileen G. Monahan and Robert F. Monahan, arrived at the hospital at approximately 3:45 A.M., March 27, 1986. Monahan's parents saw their son in the

emergency room and observed his condition. They saw a large amount of blood and observed broken bones protruding through their son's skin, and heard him screaming in pain. They were advised at the time that their son's chances of survival were uncertain. They were later told that, although he would survive, medical complications might set in, such as a blood clot in his brain or pneumonia, or other infections.

After spending several weeks in the hospital, Monahan was discharged to a rehabilitation facility for approximately three days and then returned home. He spent three months in a wheelchair and then three months on crutches. Up to the time of the accident, Monahan lived with his parents and paid them $40 a week for room and board. After the accident he has continued to pay his parents $40 a week. Prior to the accident, Monahan performed various household chores for his parents, including, for example, mowing the lawn, shoveling snow, and running errands. Monahan was twenty-four years old at the time of the accident.

On Monahan's return home after the accident, his mother quit her part-time job so as to provide full-time home care for her son; Monahan's father took two weeks' vacation leave so that he could be near his son. The parents purchased a special mattress, a recliner chair, and approximately $100 in nonprescription medications to care for the needs of their son.[3]

The plaintiff Eileen G. Monahan claims that, as a result of her son's accident, she suffered from tension and nervousness which resulted in her going to a chiropractor, beginning in December, 1986, through January, 1987, for a total of ten visits. She claims to have had pain radiating down her neck to her right shoulder and right arm, similar in nature to an ailment she had experienced ten years prior to the accident. She also lost sleep during this period as a result of tending to her son's needs.

---

[3]These bills were not presented to the town for medical indemnification costs, but would have been paid if a physician had certified that they were necessary in the care or treatment of their son.

The plaintiff Robert F. Monahan lost approximately ten to fifteen pounds within three weeks of the accident. He claims that, as a result of the injuries, his ulcer has activated, and he has suffered nausea. Between March 27, 1986, the date of the accident, and December, 1986, neither parent sought, nor required, medical attention.

Eileen G. Monahan and Robert F. Monahan, prior to their marriage, had been married previously and each had two children from their prior marriages. Their son Robert is the only child of their union. Both parents state that they have suffered heartbreak as a result of their son's injuries and the limitations to him which resulted from the accident and that they are extremely concerned for their son's future and the effect of the accident on the family relationship.

On the date of the accident, Monahan was a member of Local 1691, International Association of Firefighters, and was covered under the fire fighter contract with the town of Methuen. Immediately after the accident, and, in accordance with G. L. c. 41, § 111F (1988 ed.), the fire chief placed Monahan on leave without loss of pay for the duration of his incapacity. Additionally, the fire chief placed Monahan on full medical indemnification for all hospital, surgical, and related expenses or charges incurred as a result of the accident. G. L. c. 41, § 100 (1988 ed.). Monahan has been on leave without loss of pay and with full medical indemnification since March 27, 1986. As of October 10, 1987, these payments included $39,580.60 in medical services; $34,764.86 in wage payments; and $2,084.04 in holiday pay; for a total of $76,429.50. In addition, Monahan has, in accordance with the collective bargaining agreement with Local 1691, received accrued sick leave buy-back time during the period he has been out on leave without loss of pay.

On March 4, 1987, Monahan and his parents initiated this action. In count I, Monahan filed a $100,000 claim against the town under the Massachusetts Tort Claims Act, G. L. c. 258 (1988 ed.). In counts II and III, Monahan's parents filed claims against the town, pursuant to G. L. c. 258, for loss of consortium and for mental distress and anguish in the

amount of $100,000 each. Counts IV, V, and VI alleged contract claims against Methuen, with Monahan seeking $500,000 and his parents seeking $100,000 each. In counts VII, VIII, and IX, Monahan filed individual claims against the town manager, the fire chief, and the building inspector, based on his contentions that their conduct rose to the level of gross negligence, and that gross negligence removed their immunity from suit under G. L. c. 258. See *id.* at §§ 2, 10 (*b*).

The defendants filed motions to dismiss as to counts IV, V, and VI and for summary judgment as to counts VII, VIII, and IX. These motions were allowed. The defendant town also filed a motion for summary judgment as to counts I, II, and III. A Superior Court judge allowed summary judgment as to count I but denied it as to counts II and III, and reported counts I, II, and III to the Appeals Court. The plaintiffs appealed the judgments as to counts IV through IX. The Appeals Court allowed the plaintiffs' motion to consolidate the appeals with the report. We took this case on our own motion.

1. *Exclusivity.* The plaintiff Monahan claims that he is not barred from recovering damages from Methuen under the Massachusetts Tort Claims Act, G. L. c. 258, even though he has already recovered, and will continue to recover, benefits under G. L. c. 41, §§ 100 and 111F. We disagree.

General Laws c. 41, § 100, provides for indemnification by cities and towns of fire fighters and police officers for "reasonable hospital, medical, surgical, chiropractic, nursing, pharmaceutical, prosthetic and related expenses . . . incurred as the natural and proximate result of an accident occurring or of undergoing a hazard peculiar to his employment, while acting in the performance and within the scope of his duty without fault of his own." General Laws c. 41, § 111F, provides, in part: "Whenever a police officer or fire fighter of a city, town, or fire or water district is incapacitated for duty because of injury sustained in the performance of his duty without fault of his own . . . he shall be granted leave without loss of pay for the period of such incapacity . . . . All

amounts payable under this section shall be paid at the same times and in the same manner as, and for all purposes shall be deemed to be, the regular compensation of such police officer or fire fighter."[4]

The Massachusetts Tort Claims Act, G. L. c. 258, provides that "[p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances . . . ." G. L. c. 258, § 2. Section 2 of the act contains an exclusivity provision, which states: "The remedies provided by this chapter shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the public employer . . . ." The section also provides: "Final judgment in an action brought against a public employer under this chapter shall constitute a complete bar to any action by a party to such judgment against such public employer or public employee by reason of the same subject matter."

We think that, in enacting the Tort Claims Act, the Legislature did not intend that those who have already recovered and who will continue to recover under c. 41 have an independent cause of action against the same governmental entity under the Tort Claims Act. "All the statutes must be construed, where capable, so as to constitute a harmonious whole consistent with the legislative purpose disclosed in the new act. Such purpose is to be gleaned from the reasons, where ascertainable, leading to the legislation, from the nature of the subject matter, from the supposed evil to be corrected, and from the objective sought to be attained." *Mathewson* v. *Contributory Retirement Appeal Bd.*, 335 Mass.

---

[4]It is uncontested that, immediately after the accident, the town of Methuen, pursuant to the above provisions, placed Monahan on leave without loss of pay and indemnified him for all medical and related expenses. Monahan also may be eligible for accidental disability retirement. See G. L. c. 32, § 7 (1988 ed.).

610, 614-615 (1957). See *Jones* v. *Wayland*, 380 Mass. 110, 118 (1980).

The Legislature, in enacting the Tort Claims Act, was responding in part to our decision in *Whitney* v. *Worcester*, 373 Mass. 208 (1977), in which we announced our intention to abrogate the judicially created doctrine of governmental immunity. See *Irwin* v. *Commissioner of the Dep't of Youth Servs.*, 388 Mass. 810, 816 (1983). We have previously looked to the *Whitney* decision in interpreting portions of the Tort Claims Act. See *Patrazza* v. *Commonwealth*, 398 Mass. 464, 467 (1986). In *Whitney*, we suggested that a consideration in determining whether governmental immunity should attach is whether there existed "an alternate remedy available to the injured individual other than an action for damages." *Whitney* v. *Worcester*, *supra* at 219. We also stressed that "abrogation of governmental immunity need not necessarily mean that governmental entities would be liable for all harm which results from the conduct of their activities." *Id.* at 212. We think that the Legislature took these considerations into account when they provided in G. L. c. 258, § 2, that "[t]he remedies provided by this chapter shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the public employer."

To allow Monahan to pursue a remedy under the Tort Claims Act would lead to anomalous results. Were he to recover under the Tort Claims Act before initiating an action to enforce his rights under c. 41, he would be barred from pursuing his c. 41 remedies. But if, as Monahan would have it, he could begin collecting his benefits first, he could then proceed under the Tort Claims Act. Such a result is inconsistent with the legislative intent behind the Tort Claims Act's exclusivity provision. We do not think that the Legislature intended to allow an injured fire fighter both to collect his benefits under c. 41 and to sue under the Tort Claims Act, simply because he happened to begin collecting his benefits before initiation of the suit under the Tort Claims Act. See

*Pina* v. *Commonwealth*, 400 Mass. 408, 414 (1987). Cf. *Jones* v. *Wayland, supra* at 120.[5]

2. *Loss of consortium and emotional distress.* Counts II and III in the complaint alleged that the town was liable for damages resulting from the parents' loss of their son's consortium and for damages resulting from the parents' mental distress and anguish after observing their son's injuries immediately after the accident. The judge denied the town's motion for summary judgment as to these counts. The town argues that under G. L. c. 231, § 85X (1988 ed.), the parents may not recover for loss of consortium. We agree.

General Laws c. 231, § 85X, which created a cause of action for parents' loss of consortium of their child, was enacted in response to this court's decision in *Norman* v. *Massachusetts Bay Transp. Auth.*, 403 Mass. 303 (1988). In *Norman*, a majority of this court held that "parents cannot recover for the loss of their injured child's consortium." *Id.* at 308. The three dissenting Justices disagreed. The dissent argued that a parent should have "a cause of action for the loss of an adult child's society and companionship when that child has been severely and permanently injured due to the defendant's negligence." *Id.* at 309 (Liacos, J., dissenting). The dissent "acknowledge[d] that there are differences between the way in which parents depend on their children and the way in which spouses depend on each other and children depend on their parents. However, [we are] not persuaded that such differences should preclude the recovery of a parent for loss of consortium of his or her child who has been seriously injured by defendant's negligent acts, *especially when the severity of the injuries has resulted in the child's continued dependence on his parents and the parents' continued subordination to the needs of the child*" (emphasis supplied). *Id.* at 315. The dissent concluded, "[T]he court should hold that [the plaintiff] parents have viable claims for

---

[5]The plaintiffs rely on *Foley* v. *Kibrick*, 12 Mass. App. Ct. 382 (1981). That case is inapposite because it did not address the question whether the exclusivity provision of G. L. c. 258, § 2, applies to c. 41.

loss of filial society if they can show that [their son's] injuries are of such severity and permanence as to render him *physically, emotionally, and financially dependent on them* and that, as a result, their lives have been significantly restructured and their expectations of enjoying those experiences normally shared by parents and children have been seriously impaired" (emphasis supplied). *Id.* at 316.

In reaction to *Norman,* by St. 1989, c. 259, the Legislature enacted G. L. c. 231, § 85X, which provides: "The parents of a minor child or an adult child who is *dependent on his parents for support* shall have a cause of action for loss of consortium of the child who has been seriously injured against any person who is legally responsible for causing such injury"[6] (emphasis supplied).

In order to determine whether the parents in this case have a viable consortium claim, we must decipher the meaning of the dependency clause of the statute in question. We think that, in creating the consortium cause of action for parents of minor and adult children, the Legislature looked to the definition of dependence in our previous consortium cases. See *First Nat'l Bank* v. *Judge Baker Guidance Center,* 13 Mass. App. Ct. 144, 151 (1982), quoting *Condon* v. *Haitsma,* 325 Mass. 371, 373 (1950) (Legislature presumed to know preexisting law and decisions of this court). In *Ferriter* v. *Daniel O'Connell's Sons,* 381 Mass. 507, 516 (1980), we stated that the plaintiff "children have a viable claim for loss of parental society if they can show that they are minors dependent on [their] parent . . . . This dependence must be *rooted not only in economic requirements,* but also in filial needs for closeness, guidance, and nurture" (emphasis supplied). We also

---

[6]The statute was enacted after the motion judge ruled on the motion for summary judgment on October 26, 1987. However, the enabling statute, St. 1989, c. 259, § 2, made the act applicable "to all causes of action which accrued on or after September first, [1986,] *and to all similar causes of action now pending in any court in the commonwealth*" (emphasis supplied). As this case was pending in the Superior Court in Essex County at the time the statute was enacted, the act is applicable to this case.

think that the Legislature, in devising a statute to overturn the *Norman* decision, considered the dissent in that case. By virtue of § 85X, in order for an adult child to be considered "dependent on his parents for support," that child must be, at the very least, *financially* dependent on his parents, either prior to or after the accident, or both.

With the above considerations in mind, we conclude that Monahan's parents may not recover for loss of consortium because their son was not dependent on them financially either before or after the accident. Prior to the accident, Monahan was employed as a fire fighter and was financially independent, paying his parents $40 a week for room and board. After the accident, Monahan remained financially independent, for he continued to receive his pay pursuant to G. L. c. 41, § 111F, and continued to pay his parents $40 a week for room and board. The parents do not make any argument or point to any facts which would suggest that their son was financially dependent on his parents either before or after the accident. Therefore, judgment may now be entered for the town as to the consortium claims.

However, the town makes no reference in its brief to the mental anguish claims and does not offer any reason why those claims should not go forward. See *Ferriter* v. *Daniel O'Connell's Sons, supra* at 517-519. Questions not argued on appeal may be deemed to be waived. *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Eng'rs, Inc.*, 396 Mass. 818, 821 n.4 (1986). See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). In addition, the parents' claims for expenses incurred in nursing and caring for their son, not addressed by the town, may go forward. See *Ferriter* v. *Daniel O'Connell's Sons, supra* at 521-522.

3. *Contract claims.* In count IV, Monahan claims $500,000 in damages for breach of the employment contract, and, in counts V and VI, the parents claim that, as a result of the breach of contract, they are entitled to consequential damages resulting from loss of consortium and mental anguish. The judge granted the town's motion to dismiss as to these counts.

We agree with the town's argument that count IV represents an attempt to recast a tort claim into a contract claim. "[A] plaintiff may not avoid the requirements and limitations of the Massachusetts Tort Claims Act by designating what is essentially a personal injury claim as a contract claim." *Ayala* v. *Boston Hous. Auth.*, 404 Mass. 689, 704 (1989), citing *Schenker* v. *Binns*, 18 Mass. App. Ct. 404, 406 (1984). We have held earlier in this opinion that the Tort Claims Act's exclusivity provision, in conjunction with Monahan's receipt of benefits under c. 41, bars him from suing under the Tort Claims Act. Monahan may not avoid the consequences of this holding by pursuing his personal injury claim under a contract theory.

The parents' contract claims must fail as well. There is no allegation of any privity of contract between the town and the parents. And there is no indication or argument presented which would allow the parents to recover under a third party beneficiary theory. Cf. *Ayala* v. *Boston Hous. Auth.*, *supra* at 699-700. The motions to dismiss as to counts IV, V, and VI were correctly granted.

4. *Individual liability.* Monahan contends on appeal that the judge erroneously granted the individual defendants' summary judgment motions because the town manager, fire chief, and town building inspector "were grossly negligent in allowing a known dangerous condition to exist."[7] He contends that their "gross negligence removed the immunity of the individual defendants."

---

[7]Monahan's argument on this issue is somewhat garbled. While he occasionally refers to the recklessness standard, a fair reading of his brief demonstrates that he is arguing that the evidence supported a finding of gross negligence. For example, he states: "[W]hether the evidence reaches only the level of ordinary negligence that immunizes the town employees or the *level of gross negligence that removes the individuals' immunity*, is a question for the finder of fact." He also states: "[I]t is conceivable that the evidence presented proves gross negligence" and asserts that, at trial, "the trial judge will then instruct the jury as to the law on *ordinary negligence, on gross negligence*, and as to the duty of care owed to the Firefighter." In addition, the language quoted in the text accompanying this footnote, as well as language in Monahan's statement of the case, refers only to the gross negligence standard.

In *McNamara* v. *Honeyman*, 406 Mass. 43 (1989), we addressed the question "whether G. L. c. 258 immunizes an employee from gross negligence." *Id.* at 46. We answered the question as follows: "Two sections of c. 258 come under review in resolving this issue. Section 2 renders the public employer but not the public employee liable 'for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission.' Section 10, which provides for exemptions from operation of § 2, among others, states in pertinent part that a public employee shall *not* be immune from 'any claim arising out of an intentional tort . . . .' It is silent as to gross negligence, and hence we conclude that a public employee *is* immune from a claim arising out of gross negligence because such a claim qualifies as a 'negligent or wrongful act or omission' under § 2." *Id.* Accordingly, the individual defendants in this case are immune from personal liability for their allegedly grossly negligent conduct.

5. *Conclusion.* We summarize our conclusion.

a. The judge properly granted the town's motion for summary judgment as to count I, Monahan's claim under the Massachusetts Tort Claims Act.

b. The judge should have granted the town's motions for summary judgment as to the parents' loss of consortium claims in counts II and III. The parents' mental anguish claims and nursing expenses claims in counts II and III may go forward.

c. The motions to dismiss as to counts IV, V, and VI, the plaintiffs' contract claims, were properly granted.

d. The judge properly granted the individual defendants' motions for summary judgment.

We remand to the Superior Court for proceedings not inconsistent with this opinion.

*So ordered.*