ELAINE EYSSI & others[1] *vs.* CITY OF LAWRENCE.

Essex. May 6, 1993. - August 26, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Workers' Compensation Act*, To whom act applies, Public employees. *Police*, Injury on duty. *Massachusetts Tort Claims Act. Negligence*, Municipality, Causing loss of consortium, Causing loss of parental society. *Municipal Corporations*, Liability for tort, Police. *Husband and Wife*, Consortium. *Parent and Child*, Companionship and society, Consortium. *Actionable Tort. Statute*, Construction.

The common law right of the spouse or child of an injured police officer who has received benefits under G. L. c. 41, §§ 100 and 111F, to recover damages for loss of consortium was not abrogated by the 1985 amendment to G. L. c. 152, barring analogous loss of consortium claims in workers' compensation cases in certain circumstances. [199-201]

The exclusivity provision of G. L. c. 258, § 2, does not bar the assertion of a loss of consortium claim by the spouse or child of a police officer injured in the performance and scope of his duty. [201-203]

CIVIL ACTION commenced in the Superior Court Department on September 2, 1988.

The case was tried before *John P. Sullivan*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert J. O'Sullivan*, Assistant City Solicitor, for the defendant.

*John B. Flemming* (*Daniel J. Gibson* with him) for the plaintiffs.

---

[1]Stephanie and Sharon Eyssi, minor children, by their mother. We shall refer to Elaine and her children as "the plaintiffs" as the need to describe them arises.

LIACOS, C.J. On September 21, 1986, Officer Jacob Eyssi of the Lawrence police department was assigned to patrol the southeast sector of the city alone in a police cruiser. At 6:25 A.M., police received a call reporting an incident of domestic violence at 203 Crawford Street. The police dispatcher directed Officer Eyssi to attend to that incident. The dispatcher also directed Officer William Brown, who patrolled a different sector of the city alone in a police cruiser, to back up Eyssi.

Eyssi was the first to arrive at the reported address. While Eyssi was still in his cruiser, a woman (Lopez) ran out of 203 Crawford Street with a baby in her arms. Lopez circled Eyssi's cruiser a number of times, screaming at him to come out of the automobile. As Eyssi did so, a man (Vasquez) came out of 203 Crawford Street and proceeded toward Lopez. Eyssi told Vasquez to "take it easy," at which point Vasquez turned away from Lopez and attacked Eyssi. Vasquez knocked Eyssi down and repeatedly banged his head against the ground.

The beating stopped when a neighbor (Grillo) came out of her apartment screaming for help and yelling at Vasquez to let go. Vasquez let go of Eyssi and began "leaping" toward Grillo. At that time, another neighbor (Roeger) came running up Crawford Street. When he heard Roeger coming, Vasquez told Lopez, "I'm going to come back and finish you," and fled from the scene.

Grillo and Roeger found Eyssi lying on the ground unconscious. They called the police. This call was received at approximately 6:37 A.M., more than ten minutes after Eyssi and Brown were dispatched to 203 Crawford Street. Brown had not yet arrived at the scene.[2] Eyssi was taken to Lawrence General Hospital. He underwent an emergency craniotomy, in the course of which macerated brain tissue was removed. The damaged parts of Eyssi's brain controlled his social

---

[2]Officer Brown radioed the police dispatcher approximately twelve minutes after the original dispatch. He reported at that time that he was not near the scene of the incident.

awareness, his ability to get along with others, his motivation, and his inhibition of inappropriate behavior and speech.

On September 2, 1988, Eyssi, his wife (Elaine), and his two minor children (Stephanie and Sharon), commenced the present action against the city of Lawrence in the Superior Court. The plaintiffs' complaint alleged that Brown negligently failed to "promptly respond as the back-up unit to Jacob Eyssi in violation of . . . the Rules and Regulations of the Lawrence Police Department." The complaint further alleged that the department knew or should have known that Brown would fail to perform his duty in the circumstances. The complaint prayed for damages pursuant to the Massachusetts Tort Claims Act, G. L. c. 258, § 2 (1992 ed.). Count I requested damages for Eyssi's injuries. Count II requested damages for Elaine's loss of her husband's consortium. Counts III and IV requested damages for Stephanie's and Sharon's loss of their father's consortium.[3]

The case was tried before a jury between May 28 and June 1, 1992. In addition to evidence of the facts set forth above, the plaintiffs introduced evidence indicating that Brown negligently failed to back up Eyssi. When Brown received the dispatch call, he was 2.3 miles from 203 Crawford Street. Police regulations classified the call as an emergency domestic violence call and required an officer in Brown's position immediately to proceed to the scene. There was evidence that a reasonably prudent officer would have driven 2.3 miles in less than four minutes. As to damages, the plaintiffs introduced evidence of Eyssi's reduced capacity to function normally in his family unit.

The jury returned a verdict for the plaintiffs. The jury awarded $225,000 to Elaine,[4] $15,000 to Stephanie, and $10,000 to Sharon. The city moved for entry of judgment notwithstanding the verdict. The city argued that, as matter

---

[3]While the Eyssis' action was pending, this court rendered its decision in *Monahan* v. *Methuen*, 408 Mass. 381 (1990), barring Jacob Eyssi's claim. Thus, only the remaining counts went to trial.

[4]Pursuant to the limitations on municipal liability set forth in G. L. c. 258, § 2 (1992 ed.), the judge reduced Elaine's award to $100,000.

of law, there was insufficient evidence that its negligence was the proximate cause of the damages sustained by the plaintiffs. The city also contended that the spouse or child of an injured governmental employee has no cause of action for loss of consortium under the Massachusetts Tort Claims Act. Finally, the city argued that the exclusivity provision of the Massachusetts Tort Claims Act barred the plaintiffs' cause of action.[5] The judge denied the city's motion. This appeal followed. We transferred the case to this court on our own motion.

1. *Spouses' and Children's Right to Recover Damages Against Governmental Employer for Loss of Employee's Consortium.*

In order to provide the background necessary to our discussion, we begin with a brief description of two statutory schemes relevant to our analysis, the Massachusetts workers' compensation act, G. L. c. 152 (1992 ed.), and the statutes governing the provision of benefits to injured police officers and fire fighters, G. L. c. 41, §§ 100, 111F (1992 ed.).

The workers' compensation act "is a 'humanitarian measure' which the Legislature first enacted in 1911 (St. 1911, c. 751) in response to strong public dissatisfaction with the remedies provided by traditional tort actions." *Murphy* v. *Commissioner of the Dep't of Indus. Accidents*, 415 Mass. 218, 222 (1993). Under the act, employees who waive their right to sue in tort may obtain "compensation for loss of wages or earning capacity caused by a work-related injury, regardless of the fault of their employers or the foreseeability of harm." *Id.*, and cases cited. The 1911 version of the act did not encompass governmental employees. See *Seibolt* v. *County of Middlesex*, 366 Mass. 411, 414 (1974). "[W]hile a series of amendments has since extended coverage to most governmental employees, the two groups which have never been brought under this umbrella are members of a police or

---

[5]In this appeal, the city does not pursue the issue whether the plaintiffs introduced sufficient evidence of negligence to support the verdict. The city pursues only the second and third grounds of its motion for judgment notwithstanding the verdict.

fire force." *Wormstead* v. *Town Manager of Saugus*, 366 Mass. 659, 664 n.5 (1975). The exclusion of police officers and fire fighters from the scope of the act remains in force today. See G. L. c. 152, § 69 (1992 ed.).

In 1952, the Legislature provided for leave without loss of pay for police officers and fire fighters injured in the performance of their duty. See G. L. c. 41, § 111F, inserted by St. 1952, c. 419. See also *Wormstead, supra.* The Legislature also provided for payment by municipalities of the medical and related expenses of a police officer or a fire fighter injured "while acting in the performance and within the scope of his duty without fault of his own." G. L. c. 41, § 100. Eyssi has received benefits under these provisions.[6]

The Legislature enacted the Massachusetts Tort Claims Act in 1978, after this court announced its intention to abandon the doctrine of governmental immunity. See *Whitney* v. *Worcester*, 373 Mass. 208 (1977). Section 2 of the Act provides that governmental entities shall be liable for damages "caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances." G. L. c. 258, § 2 (1992 ed.). This language extends the application of the traditional tort theories of liability to governmental entities. See *Dinsky* v. *Framingham*, 386 Mass. 801, 804-805 (1982). See also *A.L.* v. *Commonwealth*, 402 Mass. 234, 252 (1988) (O'Connor, J., dissenting); *Irwin* v. *Ware*, 392 Mass. 745, 752 (1984); *Gallant* v. *Worcester*, 383 Mass. 707, 714 (1981).

The common law of this Commonwealth recognizes the right of a wife or a husband to recover damages for the loss of his or her spouse's consortium. See *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153, 167 (1973). A child has a similar common law right to recover for loss of parental consortium if he or she can show sufficient dependence on the parent. *Ferriter*

---

[6]Eyssi now receives accidental disability retirement benefits pursuant to certain provisions of G. L. c. 32 (1992 ed.). See *infra* at 202.

v. *Daniel O'Connell's Sons*, 381 Mass. 507, 516-517 (1980).[7]
In *Ferriter*, *supra* at 524-530, we held that such recovery
was available against the injured spouse's employer even if
the injured spouse received workers' compensation benefits
under G. L. c. 152, § 24.[8] In 1985, as part of a comprehen-
sive revision of the workers' compensation act, the Legisla-
ture amended § 24 to bar loss of consortium claims against
an employer unless the employee gave notice at the time of
hire that he or she did not waive common law rights. See St.
1985, c. 572, § 35.

The city argues that this amendment to the workers' com-
pensation act evinces a legislative intent to abrogate the com-
mon law cause of action for loss of consortium where an in-
jured police officer receives benefits under G. L. c. 41,
§§ 100 and 111F. The city concedes that these sections con-
tain no language abrogating such cause of action. However,
the city argues that §§ 100 and 111F form the functional
equivalent to the workers' compensation statute and should
be construed to embody the statutory bar to loss of consor-
tium claims which the Legislature included in G. L. c. 152.
The city contends that the cases construing language in
§ 100 and § 111F have done so in light of analogous provi-
sions of G. L. c. 152, and that we should do the same here.
In support of this argument, the city cites such cases as *Blair*
v. *Selectmen of Brookline*, 24 Mass. App. Ct. 261, 264
(1987), *S.C.*, 26 Mass. App. Ct. 954 (1988); *Allen* v.
*Selectmen of Weymouth*, 15 Mass. App. Ct. 1009 (1983);
*DiGloria* v. *Chief of Police of Methuen*, 8 Mass. App. Ct.
506, 512 (1979).

We are not persuaded by the city's argument. It is well
established that "an existing common law remedy is not to

---

[7]As to the statutory rights of parents for loss of consortium of their chil-
dren, see G. L. c. 231, § 85X (1992 ed.). See also *Monahan* v. *Methuen*,
408 Mass. 381, 388-390 (1990) (construing § 85X).

[8]We based our conclusion on the rule of interpretation whereby statutes
are not construed to abrogate common law rights in the absence of explicit
statutory language. *Ferriter* v. *Daniel O'Connell's Sons*, 381 Mass. 507,
521 (1980).

be taken away by statute unless by direct enactment or necessary implication." *Ferriter, supra* at 521, citing *King* v. *Viscoloid Co.*, 219 Mass. 420, 425 (1914). Moreover, "[a] statute is not to be interpreted as effecting a material change in or a repeal of the common law unless the intent to do so is clearly expressed." *Riley* v. *Davison Constr. Co.*, 381 Mass. 432, 438 (1980), quoting *Pineo* v. *White*, 320 Mass. 487, 491 (1946). The 1985 amendment to the workers' compensation act did not alter these established canons of statutory construction. Accord *MacQuarrie* v. *Balch*, 362 Mass. 151, 152 (1972) (Legislature presumed to be aware of prior decisions of this court). Nor does the 1985 amendment state that consortium actions against public employers of police and fire fighters are barred. Had the Legislature intended the provisions of § 100 or § 111F to abrogate the common law rights of a police officer's spouse or child, we think it would have done so explicitly. Cf. *Riley, supra* at 436-438 (legislative abolition of contributory negligence did not repeal by implication related doctrine of assumption of the risk).[9]

Our conclusion does not imply that we disapprove of the cases harmoniously construing analogous provisions of the workers' compensation act and of §§ 100 and 111F. See *Boswell* v. *Zephyr Lines, Inc.*, 414 Mass. 241, 247 (1993) (when possible, related statutes should be construed harmoniously "so as to give rise to a consistent body of law"). We decline, however, to hold that those statutes are so intricately related as to warrant the wholesale adoption of all amendments to one into the other. As the fact of this case illustrates, police officers (and fire fighters) confront daily risks which most working people ordinarily do not encounter. The Legislature could have concluded that families of those who engage in such comparatively dangerous — yet socially bene-

---

[9]In this respect, we note also that the 1985 revision of the workers' compensation act affected § 69, but did not alter the exclusion of police and fire force members from the provisions of the workers' compensation act.

ficial — lives are entitled to greater protection against sudden loss of consortium, companionship, and society.[10]

Accordingly, we hold that the 1985 amendment to G. L. c. 152 does not abrogate the common law cause of action for loss of consortium of the spouse or child of a police officer.[11]

2. *The Exclusivity Provision of the Tort Claims Act.*

General Laws c. 258, § 2, provides that "[f]inal judgment in an action brought against a public employer under this chapter shall constitute a complete bar to any action by a party to such judgment against such public employer or public employee by reason of the same subject matter." We have rejected the argument that this exclusivity provision does not apply where an injured employee has begun collecting benefits *before* bringing an action under the Tort Claims Act. *Monahan* v. *Methuen*, 408 Mass. 381, 386 (1990). In *Monahan*, we held that an injured police officer or fire fighter who already had recovered — and who would continue to

---

[10]Moreover, we note that there exist significant differences between the workers' compensation act and the statutory scheme established by § 100 and § 111F. For example, police officers have no express right pursuant to § 111F to preserve their common law rights. Compare and contrast G. L. c. 152, § 24 (1992 ed.).

[11]Nothing in *Anderson* v. *Springfield*, 406 Mass. 632 (1990), requires us to reach a contrary result. In that case, the plaintiffs sought to recover damages for an injury allegedly caused by a defect in home plate on a softball diamond in a public park. Summary judgment was entered for the defendant on the ground that the Commonwealth's recreational use statute, G. L. c. 21, § 17C, excluded from liability an "owner of land who permits the public to use such land for recreational purposes without imposing a charge or fee therefor." The plaintiffs argued that, because this statute had been adopted before the Massachusetts Tort Claims Act removed governmental immunity, its drafters could not have intended it to encompass public owners of land.

We held that, regardless of whether a statutory ambiguity existed as to whether the city was an "owner of land" within the meaning of the recreational use statute, "the Massachusetts Tort Claims Act resolves all doubt in favor of the city [because it] provides that governmental entities are to be liable 'in the same manner and to the same extent as a private individual under like circumstances.'" *Id.* at 634, quoting *Dinsky* v. *Framingham*, 386 Mass. 801, 804 (1982). Unlike *Anderson*, the city in the present case relies on a statute entirely devoid of language that abrogates the plaintiffs' common law rights.

recover benefits — under G. L. c. 41 had no independent cause of action against the same governmental entity pursuant to the Tort Claims Act.

The city argues that the principles set forth in *Monahan* govern the present case and preclude the plaintiffs' recovery. The city notes that Jacob Eyssi is presently receiving accidental disability retirement benefits pursuant to G. L. c. 32, § 7 (1992 ed.).[12] The city concedes that the plaintiffs receive no such benefits but it argues that they may become entitled to some form of compensation under c. 32 in the future.[13] For example, the city claims that Elaine will be entitled to retirement benefits if Eyssi dies as a result of the injuries which he sustained on September 21, 1986. See G. L. c. 32, § 9 (1992 ed.). The city also argues that, had Eyssi died from such injuries while on accidental disability retirement, Stephanie and Sharon also would have been entitled to benefits provided that Elaine predeceased Eyssi or remarried after his death. G. L. c. 32, § 9. The availability of such potential benefits, the city contends, brings the present case within the rationale of *Monahan.*

Because the Tort Claims Act was enacted as a response to our decision in *Whitney* v. *Worcester, supra,* we "have previously looked to the *Whitney* decision in interpreting portions of the Tort Claims Act. See *Patrazza* v. *Commonwealth,* 398 Mass. 464, 467 (1986). In *Whitney,* we suggested that a consideration in determining whether governmental immunity should attach is whether there existed 'an alternate remedy available to the injured individual other than an action for damages.' *Whitney* v. *Worcester, supra* at 219." *Monahan, supra* at 387. Such consideration, however, was not the only

---

[12]We note again that the injured officer (Eyssi) withdrew his claim as a result of the *Monahan* decision, and, further, we did not rule in that case that consortium claims were precluded. Instead, we ruled only that the parents of Monahan did not meet the requirements as to consortium claims prescribed by G. L. c. 231, § 85X.

[13]Also, the city notes that Elaine would have been entitled to retirement benefits if Eyssi had immediately died at the scene due to his injuries. G. L. c. 32, § 100 (1992 ed.).

one embraced by *Whitney.* That case also gave considerable weight to the "public interest in fairness to injured persons," which we said should be balanced with the public interest in "promoting effective government." *Whitney, supra* at 216.

We conclude that extending the *Monahan* absolute bar to recovery to the present case would not further the Tort Claims Act's accommodation of these competing interests. *Monahan* was based on the need to avoid an anomalous rule whereby plaintiffs could elect to obtain damages under c. 41 and proceed later pursuant to the Tort Claims Act. By contrast, the alternate remedies available to the plaintiffs in the present case are prospective and hypothetical. Moreover, because such damages are contingent on Eyssi's death, they do not compensate Eyssi's family for the hardship of witnessing and experiencing the degradation of his mental health. See *Diaz* v. *Eli Lilly & Co.,* 364 Mass. 153, 160 (1973), quoting *Ekalo* v. *Constructive Serv. Corp. of Am.,* 46 N.J. 82, 84 (1965) (crux of wife's loss of consortium cause of action is right to receive compensation for "loss of companionship and affection, of sexual enjoyment, and of prospects of motherhood, when her husband has been reduced to a husk of manhood by physical and psychological injury caused by the negligent fault of the defendant, when she has been changed 'from a loving wife into a lonely nurse' "). Accordingly, we decline to extend the *Monahan* rule to the facts of the present case.

"[A] claim for loss of consortium is independent of the damage claim of the injured spouse." *Feltch* v. *General Rental Co.,* 383 Mass. 603, 607 (1981). The Legislature's intent to confine the applicability of § 2 to the individual claim of a negligence victim leaves a spouse (or child) free to assert his or her loss of consortium cause of action even if the injured employee has already asserted a claim for damages.

In sum, we hold that the 1985 amendment to G. L. c. 152 does not abrogate the common law rights of the spouses and children of police officers and fire fighters who receive benefits pursuant to G. L. c. 41. We also hold that the exclusivity provision of G. L. c. 258, § 2, does not bar the assertion of a

loss of consortium claim by the spouse or the child of such an injured employee.

*Judgment affirmed.*