Gordon, Robert B., J.
Plaintiff Thomas S. Reis has brought a multi-count Class Action Complaint (the “Complaint”) against defendants Knight’s Airport Limousine Service, Inc. (“Knight’s” or the “Company”) and each of its President and Treasurer. The central allegation of the Complaint is that Knight’s habitually faded to pay due overtime wages to Reis and the putative class of Limousine Drivers he would represent, in violation of Massachusetts wage and hour laws. Presented for decision is the defendants’ Motion to Dismiss Counts I-IV of the Complaint. The motion is premised principally on the contention that plaintiff and his would-be class members are employees of a “common carrier” and, as such, are statutorily exempt from the overtime rights forming the basis of these claims. Following a hearing and for the reasons which follow, the defendants’ Motion to Dismiss is ALLOWED IN PART and DENIED IN PART.
FACTUAL BACKGROUND
Taking the allegations of the Complaint as true, and drawing all reasonable inferences therefrom in favor of the plaintiff, as the Court must when reviewing a Motion to Dismiss under Rule 12(b)(6), see Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), reveals the following pertinent facts.
Knight’s is a Massachusetts corporation which provides limousine, van and other transportation services throughout the Commonwealth. Michael F. Hogan is the Company’s President, Thomas R. Hogan its Treasurer. Plaintiff was employed by Knight’s as a Limousine Driver, in which capacity he at various times worked more than 40 hours in a week without receiving at least 1 times his regular rate of pay for the hours worked in excess of 40.
Knight’s provides a variety of transportation services, for which it deploys a fleet of vehicles that include limousines, vans and town cars of diverse dimensions. The majority of these vehicles weigh less than 10,000 pounds and carry fewer than eight passengers. Knight’s enters into individual transportation agreements with customers, pursuant to which it picks up passengers at pre-designated locations and drives them to pre-determined destinations. Pick-up and drop-off points vary by agreement, and Limousine Drivers neither follow fixed routes nor collect riders indiscriminately during their contracted transports.
Knight’s is licensed as a “common carrier” under Mass. G.L.c. 159A, Sec. 11A, and as such is authorized to provide both charter services for groups of ten or more and carriage transport for passengers along established routes between fixed termini.[1] Plaintiff and the class of Limousine Drivers he proposes to represent did not principally perform such services. Plaintiffs primary duty, rather, was to operate commercial vehicles carrying fewer than eight passengers, and to shuttle such passengers to and from pre-des-ignated locations in accordance with individual customer agreements. The Complaint seeks overtime compensation only for class members’ limousine services of this unregulated variety.
DISCUSSION
Counts I through IV of the Complaint each source to a single allegation. Namely, plaintiff maintains that he and similarly situated Limousine Drivers are entitled to overtime compensation for hours worked in excess of 40 in a week. Counts I, II and III allege that, in failing to pay such overtime, Knight’s and its executive officers violated the Massachusetts Overtime Statute, G.L.c. 151, Sec. 1A (Count I), its interpretive regulations under 455 C.M.R. 2.02(3) (Count II), and the Massachusetts Payment of Wages Act, G.L.c. 149, Sec. 148 (Count HI). Count IV relatedly alleges that, by failing to pay overtime compensation to which the plaintiff was entitled, the defendants breached an implied agreement to pay him his due wages.[2]
At the outset, the Court sees no reason to preserve Count II (Violation of Overtime Regulations) for trial. This claim appears to be entirely derivative (and du-plicative) of the statutory causes of action asserted in Counts I and III. It requires the same elemental proof, and affords nothing in the way of remedies that does not already avail under the pleaded statutes. At the same time, the Court is unaware of any private right of action that attaches to breach of wage regulations promulgated by the Department of Labor Standards independent of the state statutes which these regulations interpret. See Buck v. American Airlines, Inc., 476 F.3d 29, 33 (1st Cir. 2007) (“Regulations alone cannot create private rights of action; the source of the right must be a statute”). Although plaintiff rightly points out that 455 C.M.R. 2.07 states that any violation of 455 C.M.R. 2.00 et seq. will subject an employer to the *41 remedies available under Mass. G.L.c. 151, that is precisely the point. A regulatory violation may furnish the substantive basis for a claim under a wage statute like Chapter 151; but it will not give rise to an independent cause of action jurther to a claim under the statute itself. Having already pleaded an overtime claim pursuant to Chapter 151 in Count I of the Complaint, the plaintiff may not pyramid an identical overtime claim on top of it premised on a violation of interpretive regulations issued under that same statute. Defendants’ Motion to Dismiss as to Count II, therefore, is ALLOWED.
Counts I and III of the Complaint embody the essential thrust of plaintiffs lawsuit, and it is to these wage and hour claims that the defendants’ principal affirmative defense is addressed. The defendants’ Rule 12 motion asserts that Counts I and HI fail as a matter of law, because Limousine Drivers like the plaintiff are statutorily exempt from overtime eligibility. Plaintiff puts forward a contrary construction of the subject exemption, and the issue presented is purely one of law.
Mass. G.L.c. 151, Sec. 1A provides in relevant part as follows:
Except as otherwise provided in this section, no employer in the commonwealth shall employ any employee in an occupation, as defined in section two, for a work week longer than forty hours, unless such employee receives compensation for his employment in excess of forty hours at a rate not less than one and one half times the regular rate at which he is employed . . .
This section shall not be applicable to any employee who is employed:—
(11) by an employer licensed and regulated pursuant to chapter one hundred and fifty-nine A.
Mass. G.L.c. 151, Sec. 1A(11). The defendants argue that, inasmuch as Knight’s is a “common carrier” licensed to provide charter and carriage transport services under Chapter 159A, all those “employed by” it are exempt from overtime eligibility in accordance with Subsection 11.
It is true that Knight’s is a common carrier licensed to provide charter and carriage transportation under Mass. G.L.c. 159A. In a plain-language sense, therefore, plaintiff and his fellow Limousine Drivers are “employed ... by an employer licensed and regulated pursuant to [Chapter 159A],” and would thus appear to qualify for the overtime exemption of G.L.c. 151, Sec. 1A(11). At the same time, however, it is equally true that Knight’s Limousine Drivers do not work in an area of the Company’s transportation business falling within the scope of Chapter 159A’s coverage. The most applicable provisions of Mass. G.L.c. 159A state in pertinent part as follows:
No person shall operate or offer to provide service by means of any motor vehicle canying ten or more persons, including the driver, upon any public way in charter service, as hereinafter defined, unless he shall have obtained from the department a license to engage in the business of rendering such service and certifying that the rendering of such service is consistent with the public interest, and that public convenience and necessity require it and that the applicant is fit, willing and able properly to perform such service. “Charter service” is hereby defined as the transportation of groups of persons who, pursuant to a common purpose and under a single contract, and at a fixed charge for the vehicle have acquired the exclusive use of the vehicle for the duration of a particular trip or tour and in such a manner as not to be subject to section one.
Mass. G.L.c. 159A, Sec. 11(A).
Accompanying the foregoing, Mass. G.L.c. 159A, Sec. 1 alternately provides that city council or town selectmen licensure shall be required for vehicles of any size—
for the carriage of passengers for hire, in such a manner as to afford a means of transportation similar to that afforded by a railway company, by indiscriminately receiving and discharging passengers along the route on which the vehicle is operated or may be running, or for transporting passengers for hire as a business between fixed and regular termini. . .
Mass. G.L.c. 159A, Sec. 1.
Thus, while Knight’s possesses an authorizing license to perform both charter and fixed carriage route services under Chapter 159A (a fact conceded by plaintiffs counsel at oral argument), the Complaint makes clear that plaintiff and the class of Limousine Drivers he would represent were at no time employed within these licensed areas of the Company’s transportation business. Plaintiff at all times performed driving services for Knight’s that entailed operating vehicles which carried fewer than eight persons, and did not involve receiving and discharging passengers on an indiscriminate basis between set terminus points or along established routes. To the contrary, plaintiff carried out his limousine driving for fixed groups of Knight’s customers and in accordance with individualized transportation agreements. Such driving does not qualify as either species of licensed service under Chapter 159A.
The core question raised in the defendants’ Motion to Dismiss, therefore, is whether the common carrier exemption of Chapter 151, Section 1A(11) extends to all employees of the carrier entity on a “blanket” basis, or whether this overtime exemption covers only those particular employees who perform services of the type requiring the referenced Chapter 159A license. The text of this provision of the statute can be read either *42 way, and our courts have not yet had occasion to construe it in any published decisions. That being said, the undersigned believes that the better reading of the law—that is, the one that appears to fulfill its evident policy purposes—is the latter.
First, the language of Chapter 151, both its coverage in Section 1A and the exemption provided for in Subsection 11 thereof, speaks in terms that focus on the compensation obligations that are owed to particular employees. This recurrent focus alone suggests that the Legislature intended to define and then limit the overtime rights of workers who perform specific jobs, rather than cover and then exempt broad categories of employers in regard to the duty to pay such overtime.
Second, the substantial weight of federal authority has construed an analogous exemption under the Fair Labor Standards Act to cover employees of “motor carriers” only as and to the extent their actual work entails operation of the qualifying vehicles thereof Thus, with respect to owners of so-called “mixed fleets”—consisting of vehicles both under and over the 10,000 pound threshold of the motor carrier exemption—employees of such entities will be entitled to overtime compensation (and not barred by the exemption) when they operate smaller and non-covered vehicles. See, e.g., O’Brien v. Lifestyle Transp., Inc., 956 F.Sup.2d 300, 305-07 (D.Mass. 2013) (holding motor carrier exemption did not apply to limousine drivers operating non-covered vehicles for employer with a mixed fleet). Accord Bedoya v. Aventura Limousine & Transportation Service, Inc., 2012 WL 3962935 at *4 (S.D.Fla. Sept. 11, 2012) (“[A]n employee’s work need only in part involve the operation of non-commercial vehicles to be entitled to overtime”) (emphasis in original); Avery v. Chariots for Hire, 748 F.Sup.2d 492, 500-01 (D.Md. 2010) (“In some situations where use of non-commercial motor vehicles is of very limited duration or extent, it may be appropriate to differentiate between employees or to apply the motor carrier exemption only for those periods of time when employees were operating commercial vehicles”); Brooks v. Halstead Communications Ltd., 620 F.Sup.2d 193, 199-201 (D.Mass. 2009) (holding motor carrier exemption did not apply in the absence of evidence that employees seeking overtime ever worked on or drove company’s limited number of commercial vehicles); Tews v. Renzenberger, Inc., 592 F.Sup.2d 1331, 1346 (D.Kan. 2009) (rejecting argument that “the mere presence of commercial motor vehicles in [a] fleet renders all employee-drivers exempt under the [motor carrier] exemption”). Given the long acknowledged kinship between the Massachusetts Overtime Statute and the FLSA, see Goodrow v. Lane Bryant, Inc., 432 Mass. 165, 171 (2000), the Court here sees wisdom in aligning its interpretation of Section 1A(11) with the prevailing view of a parallel exemption under the federal law.[3]
The defendants point out that the Massachusetts Department of Labor Standards has issued guidance on the application of other overtime exemptions under Chapter 151, Sec. 1A that are characterized as establishment-based and thus “blanket” in their employee coverage. These include statutory exemptions for employees employed “in a hotel, motel, motor court or like establishment” (G.L.c. 151, Sec. 1A(12)), “in agasoline station” (G.L.c. 151, Sec. 1A(13)), “in a restaurant” (G.L.c. 151, Sec. 1A(14)), “in a [seasonal business]” (G.L.c. 151, Sec. 1A(9), “in a hospital, sanitarium, convalescent or nursing home . . .” (G.L.c. 151, Sec. 1A(16), or “in a non-profit school or college” (G.L.c. 151, Sec. 1A(17). The Court, however, observes that the so-called blanket exemptions of the Massachusetts Overtime Statute are phrased differently from the common carrier exemption to which they are analogized by the defendants. The blanket exemptions in each case extend to employees working “in” one of the referenced categories of establishment, a determination based on the physical location where the workers perform their service and not affected by the substantive nature of their duties. The common carrier exemption, by contrast, applies to employees “employed . . . by an employer licensed and regulated pursuant to [Chapter 159A].” This language tethers coverage of the exemption not broadly to all workers performing within a particular physical venue, but rather more narrowly to persons performing work for a statutorily regulated transportation provider.[4] Indeed, it bears noting that the very treatise that counsel for the defendants brought to the Court’s attention in support of their dismissal argument (see Massachusetts Wage & Hour Peculiarities (Seyfarth Shaw 2d ed. 2014) at 9 5) does not even include the common carrier exemption of Subsection 11 within the cohort of establishments to which the so-called “blanket” exemption applies. This, too, suggests that the language employed by the legislature in Subsection 11 was meant to produce a different reach from the establishment exemptions upon which the defendants rely.
This textual variation aside, the Court does not read the two Department of Labor Standards (DLS) opinion letters cited by the defendants as lending authority to the contention that Subsection 11 must be construed to exempt all persons employed by a common carrier— irrespective of the actual work such persons perform. In March 2006, the DLS issued an opinion letter in which the agency declared, as defendants note, that the hotel exemption of Subsection 12 applies to all workers “with some involvement in on-site hotel operations.” (See Defendants’ Memorandum of Law, at p. 7.) The opinion letter, however, explicitly declined to extend the exemption to banquet servers who work off-site rather than “in” the hotel. See DLS Opinion Letter MW-2006-001 (Mar. 10, 2006). Thus, the DLS appears not to apply this establishment exemption in the blanket (all-employees covered) manner urged by the defendants. Instead, and consistent with how the *43 federal motor carrier exemption is interpreted, the agency limits its reach to those employees whose actual work (that is, the location of its performance) comes within the exemption’s substantive coverage.
The DLS opinion letter construing the seasonal business exemption of Subsection 9, also relied upon by the defendants, is to similar effect. In that letter, the DLS declared:
Given that state and federal laws governing this area were likely adopted for similar purposes—to recognize the unique nature of seasonal enterprises that operate for short business seasons, but often entail longer work days—this Office will adopt a similar interpretation of M.G.L.c. 151, Sec. 1A(9). We will interpret the phrase “carried on” to mean open for business (for 120 days or less) and, once a business has been granted a seasonal overtime waiver, that waiver will cover those employees who, throughout the year, perform work that is a routine, normal incident to the seasonal operation.
MW-2005-001 (Feb. 3, 2005) (emphasis added). Once again, the language of the DLS opinion appears to extend the seasonal business exemption not to every employee of the entity, but rather only to those whose work is a “routine, normal incident to the seasonal operation.” Employees who perform services for the business that are unrelated to the seasonal operation would not appear covered. This interpretation cuts against the defendants’ argument that establishment-based (e.g., “employed by”) exemptions are meant to apply across-the-board to all employees within the organization, irrespective of the actual work they perform.
Finally, the defendants’ construction of Massachusetts law would, if adopted, produce curious results. If every employee working for a common carrier qualified for the Section 1A(11) exemption, regardless of their actual employment role, then secretaries, janitors and other non-driver laborers having nothing whatsoever to do with the exemption’s policy purpose would be robbed of their overtime rights. Indeed, large and multi-faceted transportation companies could obtain a Chapter 159A license for an insignificant component of their business, merely to exempt the entire entity from the obligation to pay overtime to thousands of workers not involved in that part of the business. The Court declines to pursue such a counter-intuitive course. Defendants’ Motion to Dismiss Counts I and III of the Complaint, therefore, is DENIED.
Turning to Count IV of the Complaint, plaintiff alleges that the defendants’ failure to pay him legally due overtime compensation gives rise to an implied claim for breach of contract. Once again, the text of the Complaint contains no specific allegation to the effect that the parties shared an actual understanding that plaintiff (or any of his fellow Limousine Drivers) would receive time and one-half his regular rate for hours worked in excess of 40 in a week. Instead, Count IV appears to rest on the premise that all employers implicitly promise to adhere to the Commonwealth’s wage and hour laws, such that any failure of compliance in this regard will give rise to a common-law claim for breach of contract.
At the outset, the Court does not agree with the suggestion that, because this claim overlaps substantively with plaintiffs statutory wage and hour claims, no common-law cause of action can avail. The law has long recognized that duties arising out of a contract may be distinguished from those imposed by statute, “and the two do not merge simply because they cover similar subject matter.” Manning v. Boston Medical Center Corp., 725 F.3d 34, 56 (1st Cir. 2013). “(A]n existing common-law remedy is not to be taken away by statute unless by direct enactment or necessary implication.” Eyssi v. City of Lawrence, 416 Mass. 194, 199-200 (1993). In Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337 (2008), the SJC applied this principle to a claim by workers alleging that their employer had denied them their statutory meal periods without payment. The plaintiffs brought suit under G.L.c. 149, Sec. 100 and for breach of contract, each claim premised upon the same deprivation. The defendants argued that the failure of the statutory cause of action required the dismissal of the contract claim, but the Court disagreed. ‘The lack of a statutory private right of action presents no bar to the plaintiffs’ claim that [defendant] violated a contractual duty to provide meal periods to the plaintiff class.” Id. at 373-74. Accord, Manning, 725 F.3d at 56 (“plaintiffs’ inability to avail themselves of a remedy under the wage-and-hour laws did not preclude a common-law claim that sought to vindicate distinct legal rights”).
This notwithstanding, the claim asserted in Count IV does not merely overlap in its subject matter with plaintiffs statutory wage and hour claims. It is, rather, a restatement of the identical claim, root to branch. Plaintiff has not alleged that Knight’s actually committed to pay him an overtime rate for hours worked in excess of 40 in a week, or that anything in their dealings either prior to or during the employment relationship gave rise to an understanding (or even a reasonable expectation) that such enhanced compensation would be paid. Indeed, the claim as pleaded contains no factual detail regarding any offer, acceptance, promise or terms of agreement. Instead, plaintiff alleges no more than that Knights, like all employers, is obligated to pay earned wages in accordance with the law, and that it failed to do so when it denied him overtime for those weeks in which he worked more than 40 hours. In these circumstances, the Court finds that plaintiff has failed to put forward sufficient factual allegations, beyond conclusory labels and formulations of the law, to demonstrate an entitlement to contractual relief. See Iannacchino v. Ford Motor Co., 451 Mass. 623, 636-37 (2008). The defendants’ Motion to Dismiss as to Count IV, there *44 fore, will be ALLOWED, such dismissal to be without prejudice to plaintiffs right to re-plead the claim if and to the extent he is able to put forward factual allegations [e.g., a specific promise) adequate to make out a cause of action in contract.
CONCLUSION AND ORDER
For the foregoing reasons, the defendants’ Motion to Dismiss is ALLOWED IN PART (as to Counts II, with prejudice, and IV without prejudice) and DENIED IN PART (as to Counts I and III).

 The Court finds this fact to be established by Department of Public Utilities licensing records whose authenticity the plaintiff does not dispute. Thus, although not part of the plaintiffs filed pleading, these records may properly be considered when evaluating a Rule 12(b)(6) motion. See Schaer v. Brandeis University, 432 Mass. 474, 477 (2000).

 The Complaint contains no explicit charge that the defendants actually promised to pay time and one-half compensation to plaintiff for all hours worked in excess of 40 in a week. The gravamen of the claim in Count IV is that a commitment by Knight’s to obey the law in this respect was necessarily implicit in the parties’ employment contract.

 The defendants argue that the language of the FLSA’s motor carrier exemption differs from that of the Massachusetts Overtime Statute’s common carrier exemption, the former specifically covering the duties of the subject employees and the latter more simply addressing whether the employees are “employed by” a common carrier. The Court acknowledges that there are textual differences between the two statutes. The FLSA exemption covers “any employee with respect to whom the Secretary has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act.” See 29 U.S.C. Sec. 213(b)(1). The Massachusetts Overtime Statute’s exemption, by contrast, covers “any employee who is employed—by an employer licensed and regulated pursuant to chapter one hundred and fifty-nine A.” See G.L.c. 151, Sec. 1A(11). That said, this difference in language cannot obscure the larger fact that both statutes exempt employees whose work locates them within a regulated segment of the transportation industry. In this respect, the two laws share a fundamental affinity in purpose more powerful than the modest variations in phraseology adopted by their respective legislatures to express it.

 By the same token, the common carrier exemption extends not to “employees of’ a licensed carrier, or even to employees “hired by” such a carrier, but instead covers only employees “employed by” the common carrier. This language reinforces the notion that what matters for purposes of the exemption is not simply who hires or pays the employee, but, at the same time, what the employee is “employed” to do.