CHARLES E. MAXWELL & another *vs.* MASSACHUSETTS
TITLE INSURANCE COMPANY.

Suffolk.    March 7, 8, 1910. — May 26, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Practice, Civil,* Exceptions, Conduct of trial.   *Agency,* Broker's commission. *Broker.*
*Evidence,* Admissions and confessions.   *Joint Contractors.*

At the close of the evidence at the trial of an action before a jury, the counsel for
the defendant presented to the presiding judge in writing twenty-four requests
for rulings.  The judge refused to give the first and, after glancing through the
others cursorily but without reading them, said to counsel for the defendant
that he might read them to the jury during his argument, and that he, the judge,
would pass on them as counsel went along.  The counsel declined to do this,
stating his reasons, and the presiding judge said, " Very well."  The judge in
his charge did not deal specifically with the rulings asked for.  At the conclu-
sion of the charge, the defendant's counsel asked to have saved exceptions by
the defendant to the refusal by the judge to give the rulings asked for.  The
judge refused to allow exceptions on the ground that he had offered to permit
counsel to read the requests to the jury, to be passed upon by the judge as the
argument proceeded.  The defendant took no further exception, but did not in-
tend to waive his right to save an exception.  The judge and the defendant's
counsel misunderstood each other.  Upon the refusal of the judge to allow his
exceptions, the defendant petitioned for the establishment of their truth.  *Held,*
that, the suggestion that counsel should read the requests to the jury and that
the judge would comment thereon as the argument proceeded not being made
as a ruling of law nor as a direction as to the conduct of the trial, it was not
necessary for the defendant to save an exception thereto; and, without deter-
mining whether a judge presiding at a jury trial ever can be excused from
careful examination of requests for instructions, as to which no opinion was
expressed, that the circumstances in this case afforded no justification for the
action of the judge, that the defendant's counsel did enough to preserve his
exceptions to the refusal to give the rulings requested by him and that the
truth of the exceptions was established.

A magistrate presiding over a jury trial ought himself to state in his charge com-
prehensively, plainly and forcibly all the governing principles of law as to the
issues raised by the pleadings and supported by evidence so that the jury may
understand their duty clearly and be enabled to perform it intelligently; and
such duty cannot be performed by the judge's making a running commentary
upon requests for rulings read to the jury by counsel for one of the parties in
the case during his argument.

It is not within the authority of a judge presiding at the trial of a case before a
jury, nor within his discretionary powers, to compel counsel for one of the par-
ties, who has presented in writing twenty-four requests for rulings, to elect be-
tween reading them to the jury in his argument for the judge to comment upon
as he goes along, and waiving them.

At the trial of an action of contract for a commission for the alleged procuring of
a sale of land for the defendant, an insurance company, by the plaintiffs, two

alleged real estate brokers, a material issue was whether there was any contract of employment of the plaintiffs by the defendant. The plaintiffs did not contend that there was any express contract. There was evidence tending to show that, the plaintiffs having learned that the defendant had become the owner of the property by foreclosure, one of them sought out its president and had a conversation with him which came to nothing, but that the president gave him a price on the property and a detailed description and photographs of it, that the other plaintiff then was introduced and the two stated that they had a " deal " or " trade on " whereby they hoped to be able to get for the defendant its money out of the property, that later arrangements were made on several different occasions for some representative of the defendant to be on the property for the purpose of showing it, that the plaintiffs employed two other real estate brokers to assist them, and that a mortgage finally was negotiated upon the estate of which the defendant received the benefit. *Held*, that, although the case was close, the foregoing facts could not be said to fail utterly to support the conclusions that the defendant knew that the plaintiffs were undertaking to get for the property the price the defendant had fixed, and that the defendant was willing to take advantage of their efforts, and therefore that the defendant fairly ought to have expected to pay to the plaintiffs reasonable compensation therefor.

At the trial of an action by two real estate brokers for a commission for procuring a sale of land of the defendant, there was evidence tending to show that the plaintiffs procured the sale and that the defendant fairly ought to have expected to pay them a reasonable compensation therefor, and there also was testimony by one of the plaintiffs that, in his only conversation with the defendant, he said " We would put up some sort of a deal " or " trade " by which the price fixed by the defendant could be obtained, and that the other plaintiff testified in substance that they expected to get a mortgage and with the money thus obtained to buy the property from the defendant and make for himself the difference between the amount of the mortgage and the price which he would pay the defendant for the land. In this aspect of the evidence the defendant asked the judge to instruct the jury to the effect that, if it was the intention of the plaintiffs in what they did to buy in their own interest and at the same time to mortgage for a large amount and thus to profit by the difference between the purchase price and the amount of the mortgage, then they were not acting as brokers for the defendant but for themselves as principals, and were not entitled to recover ; and further, that the relations of broker and purchaser were incompatible, and that, if the plaintiffs intended to become purchasers, they could not at the same time be brokers for the defendant. The judge refused to give the instructions requested. *Held*, that the instructions should have been given, because they were correct statements of rules of law applicable to the evidence.

In an action by two real estate brokers for a commission for selling land of the defendant, there was evidence that there was no general partnership between the plaintiffs but that they were at the least joint participants in the alleged contract upon which recovery was sought, and one of them admitted that the transaction was not one of agency as between the plaintiffs and the defendant, but was one in which the plaintiffs were acting for themselves as purchasers. The testimony of the other plaintiff did not amount to such an admission. The defendant asked for a ruling, which was refused, to the effect that upon the undisputed evidence the plaintiffs stood in the position of prospective purchasers, and not of brokers, and that therefore they could not recover. *Held*, that the ruling properly was refused because, while the admission of the first plaintiff was competent evidence against his associate, it was not binding upon him and did not conclude him.

Rugg, J.   This case comes before us upon a petition to establish exceptions.   The first point to be decided relates to practice in a jury trial.   From the report of the commissioner it appears that at the conclusion of the evidence the defendant's counsel handed twenty-four requests for rulings to the presiding judge,* who refused to give the first (to which ruling the defendant thereupon excepted), and who did not read through the others, but, glancing them over cursorily, said to the counsel for defendant that he might read them to the jury during his argument, and the court would pass on them as the counsel went along.   The counsel declined to do this, stating his reasons.   Whereupon the presiding judge said " Very well."   Nothing more was said at that time.   The requests were not read either by the counsel in argument or by the judge, and the latter in his charge did not deal with them specifically.   At the close of the charge defendant's counsel asked to have his exceptions saved to the judge's refusal to give the requests insisted upon.   The judge refused to allow exceptions on the ground that he had offered to permit the counsel to read the requests to the jury, and he would pass upon them as the argument proceeded.   The defendant took no further exception, but did not intend to waive his right to save an exception and did not say nor think that he had made such a waiver. There was a misunderstanding between the counsel and the judge, the latter thinking that the counsel would rather forego the requests than read them to the jury as he had suggested.

This narration shows that the counsel for the defendant did enough to preserve his exceptions.   The number of requests presented was not as matter of law excessive, and their character does not appear to have been impertinent to the evidence and issues.   If a presiding judge can ever be excused for these or other reasons from careful examination of prayers for instructions seasonably presented, as to which no opinion is now expressed, the circumstances in this case afford no justification for such action.   The suggestion that the counsel should read the prayers and the judge comment on them as he went along does not appear to have been made as a ruling of law or direction as to the conduct of the trial.   This is to be inferred both from its

---

* *Bishop*, J.

unusual nature and the response of the judge to the protest of the counsel against complying with it. It is only to an "opinion, ruling, direction or judgment" that an exception can be taken. R. L. c. 173, § 106. Rule 45 of Superior Court. Hence it was not necessary to save an exception to what appears now to be, and to have been treated at the moment as, merely an intimation. It was not a matter as to which the judge had discretionary powers. A magistrate presiding over a jury trial ought himself to state in his charge comprehensively, plainly and forcibly all the governing principles of law as to the issues raised by the pleadings and supported by evidence, so that the jury may clearly understand their duty and be enabled to perform it intelligently. *Whitney* v. *Wellesley & Boston Street Railway*, 197 Mass. 495. *Plummer* v. *Boston Elevated Railway*, 198 Mass. 499, 514. It is incompatible with the orderly and efficient conduct of jury trials for this vitally important function of the judicial office to be performed by a running commentary upon requests read by an advocate in the cause. It is not within the authority of a presiding judge to put counsel to an election between presenting his requests in this form or waiving them. The defendant's counsel properly understood that he was not required to act by exception respecting his prayers, having seasonably presented them, until the end of the charge, when for the first time he knew or had reason to believe that the judge did not intend to deal with them. He then duly excepted to the refusal to give them. In the absence of conduct, silence or statement calculated to mislead the judge, it was not necessary for him further to except to the reasons then given by the judge for his refusal to allow the exceptions. The truth of the defendant's exceptions is established.

The action is by two alleged real estate brokers to recover the value of their services in negotiating a loan upon real estate belonging to the petitioner, the defendant in the original action, who will be referred to hereafter in this opinion as the defendant. The defendant contended that it had no contract of employment with the plaintiffs, and that whatever they did was in their own interest.

The defendant first requested a ruling that on all the evidence the plaintiffs could not recover. It was not contended that there

was any express contract of employment or for compensation. The plaintiffs, having learned that the defendant had become the owner of certain property by foreclosure, sought out its president and had conversation with him. The inference from all the reported testimony is strong that there was no employment even by implication, but it is not quite so plain as to warrant a ruling to that effect as matter of law. One of the plaintiffs talked with the president of the defendant as to a sale, which came to naught, but he was given a price on the property and a detailed description and photographs of it, and he then introduced the other plaintiff. At an interview between the three it was stated that the plaintiffs had a "deal" or "trade on" whereby they hoped to be able to get for the defendant its money out of the property. Arrangements were made for some representative of the defendant to be upon the property on several different occasions for the purpose of showing it. The plaintiffs appear to have employed two other real estate brokers to assist them. Later a mortgage was negotiated upon the estate of which the defendant received the benefit. The causal connection of the plaintiffs with this result, although seriously controverted by evidence, seems to have been decided in their favor by the verdict. The case is close, but these circumstances taken together cannot be said to fail utterly to support the conclusion that the defendant knew that the plaintiffs were undertaking to get for it the price it had fixed for the property, and that it was willing to take advantage of their efforts, and that reasonable compensation in this regard ought fairly to have been expected to be paid by the defendant. *Hall* v. *Grace,* 179 Mass. 400.

The plaintiff Maxwell testified that in his single conversation with the president of the defendant he said "We would put up some sort of a deal" or "trade" by which the price fixed by it could be obtained. There is at least ground for argument that these phrases are wholly inapplicable to the simple transaction of negotiating a loan, and implied, in the connection in which they were used, a purpose to acquire a personal and financial interest in the transaction. The plaintiff Leavitt testified in substance that he expected to get a mortgage and with the money thus obtained to buy the property from the defendant, and that he could make for himself the difference between the

amount of the mortgage and the price for which he could buy the land of the defendant. Upon this aspect of the evidence the defendant asked for an instruction to the effect that if it was the intention of the plaintiffs, in what they did in getting the price of the property from the defendant and undertaking to procure a loan, to buy in their own interest and at the same time mortgage it for a larger amount, and thus profit by the difference between the two sums, they were not acting as brokers for the defendant, but for themselves as principals, and were not entitled to recover, and further that the relations of broker and purchaser were incompatible, and if the plaintiffs intended to become purchasers, they could not at the same time be brokers for the defendant with the duty incumbent upon them as such to care for its interests to the best of their ability. These were correct statements of law and applicable to the evidence. A broker cannot purchase for his own use the property entrusted to him to sell. His fiduciary obligation requires him to procure the highest price obtainable, while his personal interest as buyer is directly antagonistic to that of his principal. The attempt of a broker to thus serve two masters is a fraud upon his employer, and is against public policy and deprives him of any right to a commission. *Smith* v. *Townsend,* 109 Mass. 500. *Alvord* v. *Cook,* 174 Mass. 120, 126. *Quinn* v. *Burton,* 195 Mass. 277. *Sullivan* v. *Tufts,* 203 Mass. 155.

The prayer to the effect that upon the undisputed evidence the plaintiffs stood in the position of a prospective purchaser and not of broker, and hence could not recover was properly refused. The admission of Leavitt on the witness stand above stated, that this was in substance the nature of the transaction, would have made it necessary to give the ruling, if he was the only plaintiff. There was testimony that no general partnership existed between the two plaintiffs, but they were at the least joint participants in the alleged contract on which recovery is sought, and their powers as to admissions respecting its subject matter were as extensive as those of partners. *Derickson* v. *Whitney,* 6 Gray, 248. Admissions by one partner or one of two such joint contractors as the plaintiffs were, even after the termination between themselves of their relation, are competent evidence against his associate. Whatever may be their weight

in a case like the present with a tribunal whose duty it is to determine the facts, they are not as matter of law conclusive upon those partners or joint contractors who did not make or assent to them. *Martin* v. *Root,* 17 Mass. 222, 227. *Vinal* v. *Burrill,* 16 Pick. 401. *Cady* v. *Shepherd,* 11 Pick. 400. *Bridge* v. *Gray,* 14 Pick. 55, 61. *Ide* v. *Ingraham,* 5 Gray, 106. *Dennie* v. *Williams,* 135 Mass. 28. *Buxton* v. *Edwards,* 134 Mass. 567, 579. *Singer Manuf. Co.* v. *Reynolds,* 168 Mass. 588, 590. The meagre testimony of Maxwell did not quite amount to a plain admission like that of his joint adventurer.

> *Petition for establishment of exceptions allowed; exceptions sustained.*

*S. R. Wrightington,* for the defendant.

*C. W. Bond,* (*H. E. Perkins* with him,) for the plaintiffs.