ANNA M. ROLLINS, administratrix, *vs.* BOSTON AND MAINE RAILROAD.

Essex.    May 8, 1947. — September 9, 1947.

Present: LUMMUS, DOLAN, RONAN, & SPALDING, JJ.

*Proximate Cause. Fire. Negligence,* Fire; Employer's liability: fire.

Evidence warranted findings that conduct of an employee of a railroad corporation in attempting to perform his duty of protecting his employer's property by entering a part of a burning freight shed which, although there was "smoke and great heat," the fire had not yet reached was not foolhardy, but was reasonable, and that his death while so acting was a proximate result of negligence of his employer which caused the fire.

A reasonable attempt by an employee to save property of his employer endangered by the employer's negligence is not as a matter of law such a remote consequence of the negligence as to relieve the employer from liability to the employee for injuries received by him during the attempt.

TORT. Writ in the Superior Court dated April 23, 1945.
The action was tried before *Broadhurst,* J.

*F. P. Garland,* for the defendant.

*H. C. Thompson,* (*S. J. Cagan & A. Sigel* with him,) for the plaintiff.

SPALDING, J. The plaintiff brings this action of tort under the Federal employers' liability act, U. S. C. (1940 ed.) Title 45, §§ 51–60, for the death of her husband, an employee of the defendant, who lost his life during a fire in the defendant's freight shed in Salem on June 2, 1944.[1] The jury returned a verdict for the plaintiff, and the only question for decision is whether the judge erred in denying the defendant's motion for a directed verdict.[2] It is agreed that the deceased was an employee of the defendant, a common carrier by railroad, and that at the time of his death his employment was in interstate commerce.

These facts could have been found: On the morning of June 2, 1944, the deceased was employed by the defendant as a "freight handler" at its freight shed in Salem. His hours were from 8:30 A.M. to 5:30 P.M., and on the morning of June 2 he had arrived at the freight shed shortly after eight o'clock. At the extreme east end of the shed was an office, next to which was a boiler room. Next to the boiler room, extending westerly, was a long freight shed with twelve openings or doors at intervals of about twenty feet. The freight shed, including the office building, was four hundred forty-six feet long. The doors were numbered consecutively, commencing with door No. 1 which is next to the boiler room. Between eight and eight thirty o'clock, one Whitehead, who was employed by an express company and had come to the freight shed to get some freight, noticed fire or smoke in the vicinity of door No. 3. Whitehead asked Botieri, the defendant's foreman under whom the deceased worked, for a fire extinguisher. Botieri, who was then inside the freight shed, "looked out and saw the fire start-

---

[1] The declaration also contained a count based on G. L. (Ter. Ed.) c. 229, but this was waived.

[2] The defendant waived its exceptions to the charge at the arguments before us.

ing pretty good, and hollered to the rest of the men [of whom the deceased was one], 'Get the fire extinguishers . . . . There is a fire outside the building.'" Shortly after this order was given it was apparent that the fire was spreading rapidly, and the fire department was called on the telephone. By the time the call had been put through the freight shed was "a mass of flames; . . . the whole business shot right up." The time elapsing between the discovery of the fire and the completion of the telephone call was four or five minutes. Estimates of time elapsing between the telephone call and the arrival of the fire apparatus varied from two to seven minutes.

About four minutes after the outbreak of the fire Botieri observed the deceased in the boiler room refilling a fire extinguisher with water. The deceased was last seen alive while going from the boiler room into the freight shed. The smoke in the freight shed at that time was so dense that a fellow employee who was following him was obliged to turn back. Thirty or thirty-five minutes after the arrival of the fire department, the body of the deceased was discovered by one of the firemen "not too far inside" of door No. 1. Near the deceased was a fire extinguisher. This part of the freight shed had not been burned but there "was evidence of smoke and great heat."

The freight shed at the time of the fire was "extra full" of freight. It was the "duty of all the men whether on [duty] or off duty to protect . . . [the defendant's] property."

The case was rightly submitted to the jury.

The evidence amply warranted the inference that the deceased met his death while in the act of protecting the property of his employer, and no contention is made to the contrary. And the defendant concedes that the origin of the fire could have been found to have been due to its negligence. The sole ground relied on by the defendant in support of its motion for a directed verdict is that this negligence was not the proximate cause of the deceased's death. We cannot agree. The deceased was under a duty to protect the property of his employer. That duty was to do what he could,

consistent with his personal safety, to rescue his employer's property and to prevent the spread of the fire. It could have been found that the conduct of the deceased was the normal response of a loyal employee to the situation in which he found himself. If his attempt to protect the defendant's property was rash or reckless his act rather than the negligence of the defendant would be the proximate cause of his death. See *Dixon* v. *New York, New Haven & Hartford Railroad,* 207 Mass. 126, 130; Restatement: Torts, § 443, comment b. But it cannot be said as matter of law that the deceased's conduct in entering the building where he did was foolhardy. The fire had not then reached that part of the freight shed. In any event the reasonableness of his conduct was a question of fact to be determined in the light of the circumstances then obtaining. Errors of judgment, if any there were, resulting from the excitement and confusion of the moment are not to be classed as reckless conduct. Action which may now appear to have been unwise may have seemed at the time to be the proper course. In an emergency such as that confronting the deceased the law does not require that he "should have acted with entire self-possession, or that he should have taken the wisest and most prudent course, with a view to his own self-preservation, that could have been taken." *Linnehan* v. *Sampson,* 126 Mass. 506, 511–512. See *Brown* v. *Hathaway Bakeries, Inc.* 312 Mass. 110, 114.

In most of the jurisdictions where the question has arisen it has been held that a reasonable attempt by an employee to save his employer's property, which the latter's negligence has endangered, is not, as matter of law, such a remote consequence of the employer's negligence as to relieve him from liability to the employee for injuries sustained during the attempt. *Erie Railroad* v. *Caldwell,* 264 Fed. 947 (C. C. A. 6). *Brown* v. *New York Central Railroad,* 53 Fed. (2d) 490 (D. C. E. D. of Mich.). *Atlantic Coast Line Railroad* v. *Russell,* 215 Ala. 600. *Henshaw* v. *Belyea,* 220 Cal. 458, 468–469. *Pullman Palace Car Co.* v. *Laack,* 143 Ill. 242, 258–259. *Martin* v. *North Jersey Street Railway,* 52 Vroom, 562. *Pegram* v. *Seaboard Air Line Railway,* 139

N. C. 303, 306–307. See note 61 Am. L. R. 579 et seq. We are disposed to agree with these decisions. In cases where recovery has been denied it will usually appear that the employee's conduct was rash or that he was guilty of contributory negligence. See *Bobango* v. *Erie Railroad*, 57 Fed. (2d) 667 (C. C. A. 6); *Nelling* v. *Chicago, St. Paul & Kansas City Railway*, 98 Iowa, 554, 562; *Bacon* v. *Payne*, 220 Mich. 672; *Chattanooga Light & Power Co.* v. *Hodges*, 109 Tenn. 331. In the case at bar there is no occasion to consider whether the deceased was guilty of contributory negligence as this does not preclude recovery under the Federal employers' liability act, but only mitigates damages. U. S. C. (1940 ed.) Title 45, § 53.

We recognize that since this action is brought under a Federal statute the governing law is that established by the Supreme Court of the United States, but our attention has been directed to no decision of that court, and we have found none, that is in conflict with anything herein decided.

*Exceptions overruled.*