## Kenneth D. Hopkins vs. Jorge Medeiros.

No. 97-P-1369.

Essex. April 8, 1999. - February 24, 2000.

Present: Laurence, Smith, & Lenk, JJ.

*Negligence,* Standard of care, Duty owed to rescuer, Proximate cause, Violation of statute. *Police,* Injury on duty. *Statute,* Construction. *Practice, Civil,* Instructions to jury. *Practice, Criminal,* Admission to sufficient facts to warrant finding. *Evidence,* Admitted fact.

Discussion of the rescue doctrine applicable to injuries suffered by a rescuer due to the negligence of another [603-604], and discussion of the so-called "firefighter's rule," an exception to that doctrine applicable to rescuers such as firefighters and police officers [604].

This court concluded that, where the Legislature had enacted G. L. c. 41, §§ 100 and 111F, which expressly granted police officers the right to recover damages from intentional and negligent tortfeasors, the firefighter's rule, precluding injured rescuers from maintaining such an action, had no continuing vitality in Massachusetts. [604-608]

A police officer responding to an emergency call and injured in a rescue attempt was entitled, in his negligence action brought against a person alleged to be responsible for his injuries, to rescue doctrine instructions [608-610], and the trial judge's refusal to instruct the jury as requested was not harmless error, where the threshold issue at trial was whether the defendant, a participant in a melee, owed a duty to the plaintiff; a new trial was warranted [610-612].

At the retrial of a negligence action, evidence of the defendant's admission to sufficient facts to warrant a guilty finding in a misdemeanor criminal case arising out of the same underlying facts would properly be admissible as an admission of a party opponent and would properly be the subject of cross-examination without significant restriction. [612-613]

At the trial of a negligence action, there was no error in the judge's declining to give a requested instruction regarding criminal statutes, not at issue at trial, which could have borne on the underlying facts. [613-614]

Civil action commenced in the Superior Court Department on May 11, 1992.

The case was tried before *Robert H. Bohn,* J.

*J. Michael Conley* for the plaintiff.

*Matthew Mahoney* for the defendant.

LENK, J. The plaintiff, Kenneth D. Hopkins, a Peabody police officer, filed suit against the defendant, Jorge Medeiros,[1] for negligence and for wanton and reckless conduct. Hopkins had sustained injuries while attempting to subdue a melee in Peabody. Hopkins claimed that Medeiros owed him a duty because it was foreseeable that police would respond to the dangerous situation created, in part, by Medeiros, even though Medeiros had no direct contact with Hopkins. A Superior Court jury returned a verdict in favor of the defendant, with special findings that Medeiros did not owe a duty to Hopkins and that Medeiros did not act in a wanton or reckless manner.[2] On appeal, Hopkins argues that the trial judge erred (1) by refusing to instruct the jury about the so-called rescue doctrine; (2) in giving limiting instructions to the jury about, and in restricting examination concerning, Medeiros's conviction for disorderly conduct; and (3) by giving incomplete jury instructions about the defendant's violations of law as evidence of negligence. Hopkins also argues that the firefighter's rule, an exception to the rescue doctrine, does not apply in the Commonwealth to bar his claims. Because Hopkins was entitled to a jury instruction on the rescue doctrine, we reverse.

1. *Facts.* There was testimony at trial to the following effect. On the night of October 27, 1989, Peabody police officers Bonaiuto and Waugh responded to a call to investigate a loud party at a residence in Peabody. As the officers were ticketing illegally parked vehicles, Acacio Pinto and the defendant Medeiros approached the police from the property where the party was being held. Both officers testified that Pinto and Medeiros were shouting obscenities and verbally harassing them. Medeiros in turn testified that he did not say anything. The officers asked Pinto and Medeiros for identification. Medeiros produced his driver's license, but Pinto refused, continuing the verbal abuse and threatening one of the officers. Pinto violently resisted Bonaiuto's attempt to arrest him. According to the officers, Medeiros vehemently urged Pinto to resist the arrest and shouted profanities at the police. However, Medeiros testified that he

---

[1]Hopkins's complaint named nine defendants. He settled with one and voluntarily dismissed claims against two others. Five other defendants defaulted. Medeiros was the only defendant to go to trial.

[2]Accordingly, a separate and final judgment was entered in favor of the defendant.

left the area at that point. The officers testified that a large crowd numbering over fifty people began to form. Pinto and the two officers struggled and repeatedly slammed against a police cruiser. A group of twelve to fifteen men formed a tight semicircle around Pinto and the officers, grabbing, punching and kicking the officers. According to the officers' testimony, Medeiros was part of the semicircle. There was no way for the officers to escape without climbing over the car or breaking through the irate crowd. Bonaiuto activated the emergency "officer needs assistance" button on his radio. Medeiros denied any involvement with the crowd or the police.

Officer Hopkins was one of the officers to respond to Waugh and Bonaiuto's call for help. Hopkins positioned himself between the officers and the violent semicircle of men and attempted to subdue the crowd. A shirtless young man with a blue baseball cap threw a can that just missed Hopkins's head.[3] Hopkins chased him, but abandoned the chase when he felt a sharp, disabling pain in his lower back.

2. *Rescue doctrine instruction.* Hopkins argues that the trial judge erred in refusing to instruct the jury about the so-called rescue doctrine, i.e., he did not instruct the jury as requested about normal intervening forces, specifically, how the intervention of rescuers relates to duty and proximate cause. Hopkins submitted a detailed request for jury instructions before the charge and preserved his right to appeal the judge's refusal to give his requested instructions.[4] The judge instructed the jury about the basic law of duty and proximate cause, including superseding causes. Neither party argues that the instructions given were erroneous statements of the law, but Hopkins contends that he was entitled to further instructions on the rescue doctrine, and that the absence of those instructions harmed him.

Hopkins's theory of the case was that Medeiros owed him a duty of reasonable care because it was foreseeable that police officers, such as Hopkins, would come to restore public order and to rescue Bonaiuto and Waugh from a dangerous situation created, in part, by Medeiros. A corollary to Hopkins's theory is that there were no intervening events which broke the chain of

---

[3]Hopkins testified that the shirtless young man with the blue baseball cap was not Medeiros.

[4]See Appendix for Hopkins's requested jury instructions on duty and proximate cause.

causation from Medeiros's actions to Hopkins's injury, including the can thrown by the shirtless man with the blue baseball cap. Hopkins contends that he was entitled to the rescue doctrine instructions based on evidence of Medeiros's instigation of the melee, his encouragement of Pinto, and his participation in the semicircle of men who entrapped and physically harassed Bonaiuto and Waugh while they sought to arrest Pinto. Medeiros argues that the judge's instructions on general foreseeability were correct and adequate.

The rescue doctrine has been characterized as follows: "negligence which creates peril invites rescue and, should the rescuer be hurt in the process, the tortfeasor will be held liable not only to the primary victim, but to the rescuer as well." *Barnes* v. *Geiger*, 15 Mass. App. Ct. 365, 369 (1983). Massachusetts recognizes the rescue doctrine in that "rescuers are not, as matter of law, precluded from recovery because they voluntarily placed themselves in danger." *Migliori* v. *Airborne Freight Corp.*, 426 Mass. 629, 636 (1998), citing *Barnes* v. *Geiger, supra* at 370. See *Barnes* v. *Berkshire St. Ry.*, 281 Mass. 47, 49-50 (1932); *Burnett* v. *Conner*, 299 Mass. 604, 607-608 (1938); *Brown* v. *Hathaway Bakeries, Inc.*, 312 Mass. 110, 114 (1942).

" 'Rescue' as used in ordinary parlance means 'to free from . . . danger.' " *Campbell* v. *Schwartz*, 47 Mass. App. Ct. 360, 364 (1999), quoting from Webster's Third New Intl. Dictionary 1930 (1993). "Danger is defined as 'the state of being exposed to harm.' " *Campbell* v. *Schwartz, supra.* To be considered a rescuer, an individual must engage in a proactive attempt to free another from danger. "[A] claimant's purpose must be more than investigatory. There must be asserted some specific mission of assistance by which the plight of the imperilled could reasonably be thought to be ameliorated." *Barnes* v. *Geiger*, 15 Mass. App. Ct. at 371.

In addition, such rescue missions must be voluntary. "[I]nclusion within [the class of rescuers] is by virtue of a volunteered action by the putative claimant." *Migliori* v. *Airborne Freight Corp.*, 426 Mass. at 637. However, the notion of "voluntary" does not preclude claimants who have arrived at the rescue scene as a result of their employment. In *Rollins* v. *Boston & Maine R.R.*, 321 Mass. 586 (1947), the plaintiff's husband perished while attempting to extinguish a fire in a freight shed on his employer's property. The plaintiff sued on the grounds

that the fire had started due to the employer's negligence. *Id.* at 588. The defendant employer moved for a directed verdict, arguing that the decedent employee's effort to put out the fire and not its own negligence was the proximate cause of death. *Ibid.* In affirming the jury's verdict for the plaintiff, the court stated that "[t]he deceased was under a duty to protect the property of his employer. That duty was to do what he could . . . to rescue his employer's property and to prevent the spread of the fire." *Id.* at 588-589. Therefore, the decedent's conduct in entering the building did not bar the plaintiff's recovery as a matter of law. *Id.* at 589.

Hopkins qualifies as a rescuer. Hopkins was present at the melee because of his fellow officers' emergency call. His employment brought him to the scene where he engaged in pro-active attempts to assist the other officers who were faced with a dangerous situation. Hopkins was injured during a rescue attempt and alleges that Medeiros was negligent. Therefore, Hopkins was entitled to the rescue doctrine instructions.

Medeiros contends that he owed Hopkins no duty because, insofar as Hopkins was a professional rescuer, the "firefighter's rule," a widely recognized exception to the rescue doctrine,[5] should be adopted and applied.[6] Application of this rule would serve to preclude rescuers such as firefighters and police officers

---

[5]After oral argument, this court requested that the parties file supplementary briefs discussing the applicability of the firefighter's rule. Both parties have complied with our request.

[6]See, e.g., *Grable* v. *Varela,* 115 Ariz. 222 (Ct. App. 1977); *Waggoner* v. *Troutman Oil Co.,* 320 Ark. 56 (1995); *Walters* v. *Sloan,* 20 Cal. 3d 199 (1977); *Kaminski* v. *Fairfield,* 216 Conn. 29 (1990); *Carpenter* v. *O'Day,* 562 A.2d 595 (Del. Super. Ct. 1988); *Bycom Corp.* v. *White,* 187 Ga. App. 759 (1988); *Thomas* v. *Pang,* 72 Haw. 191, (1991); *Winn* v. *Frasher,* 116 Idaho 500 (1989); *Luetje* v. *Corsini,* 126 Ill. App. 3d 74 (1984); *Koehn* v. *Devereaux,* 495 N.E.2d 211 (Ind. Ct. App. 1986); *Pottebaum* v. *Hinds,* 347 N.W.2d 642 (Iowa 1984); *Calvert* v. *Garvey Elevators, Inc.,* 236 Kan. 570 (1985); *Hawkins* v. *Sunmark Indus., Inc.,* 727 S.W.2d 397 (Ky. 1987); *Flowers* v. *Rock Creek Terrace Ltd. Partnership,* 308 Md. 432 (1987); *Kreski* v. *Modern Wholesale Elec. Supply Co.,* 429 Mich. 347 (1987); *Phillips* v. *Hallmark Cards, Inc.,* 722 S.W.2d 86 (Mo. 1987); *Wax* v. *Co-Operative Refinery Assn.,* 154 Neb. 805 (1951); *Moody* v. *Manny's Auto Repair,* 110 Nev. 320 (1994); *England* v. *Tasker,* 129 N.H. 467 (1987); *Moreno* v. *Marrs,* 102 N.M. 373 (Ct. App. 1984); *Santangelo* v. *New York,* 71 N.Y.2d 393 (1988); *Scheurer* v. *Trustees of Open Bible Church,* 175 Ohio 163 (1963); *Mignone* v. *Fieldcrest Mills,* 556 A.2d 35, 39 (R.I. 1989); *Carson* v. *Headrick,* 900 S.W.2d 685 (Tenn. 1995); *Pearson* v. *Canada Contr. Co.,* 232 Va. 177, 183 (1986); *Hass* v. *Chicago & N.W. Ry. Co.,* 48 Wis. 2d 321 (1970). Several

from "maintaining a negligence action against a person alleg-edly responsible for bringing the officer to the scene of a crime, fire, or some other job-related incident of similar exigency where the officer is then injured because of this same person's alleged negligence." *Day* v. *Caslowitz*, 713 A.2d 758, 759 n.1 (R.I. 1998). Based on the testimony at hand, it was Medeiros's alleged negligent conduct that brought Hopkins, in the course of his police duties, to the scene of the melee in process where Hopkins then sustained an injury. Were we to adopt the fire-fighter's rule as Medeiros suggests, Hopkins would be barred from bringing this negligence action against Medeiros.

Historically, both in this Commonwealth and many other jurisdictions, the firefighter's rule was applied to limit the li-ability of landowners whose property conditions had resulted in injury to firefighters or police officers entering the premises. *Wynn* v. *Sullivan*, 294 Mass. 562, 564 (1936). *Aldworth* v. *F.W. Woolworth Co.*, 295 Mass. 344, 346 (1936). *Walters* v. *Sloan*, 20 Cal. 3d 199, 202 (1977).[7] In cases where a firefighter or police officer was injured due to alleged negligence on the part of a landowner, such rescuers were held to be licensees. See *Wynn*, *supra* (police officer who fell into elevator well after responding to a disturbance in defendant's building held to be licensee); *Aldworth*, *supra* (firefighter injured in fall from unsafe fire escape held to be licensee); Prosser & Keeton, Torts § 61, at 429 (5th ed. 1984). The underlying rationale was that landowners would otherwise be forced to carry the unreason-able burden of preparing for the infrequent and unforeseeable visits of such rescuers. Prosser & Keeton, Torts § 61, at 432; Restatement (Second) of Torts § 345 comment c, at 228 (1965).

However, because such rescuers entered under legal author-ity, Massachusetts and other jurisdictions found it increasingly difficult to categorize firefighters and police officers as licensees.

---

jurisdictions utilize a "professional rescuer doctrine." See *Young* v. *Sherwin-Williams Co.*, 569 A.2d 1173 (D.C. 1990); *Mullins* v. *State Farm Fire & Cas. Co.*, 697 So. 2d 750 (La. Ct. App. 1997); *Maltman* v. *Sauer*, 84 Wash. 2d 975 (1975).

[7]Although the rule is widely described as the "firefighter's rule," jurisdic-tions that have adopted the rule have also applied it to police officers. See, e.g., *Walters* v. *Sloan*, 20 Cal. 3d at 202; *Pottebaum* v. *Hinds*, 347 N.W.2d at 647; *Flowers* v. *Rock Creek Terrace Ltd. Partnership*, 308 Md. at 442-443. We will refer to the rule here as the "firefighter's rule."

*Mounsey* v. *Ellard*, 363 Mass. 693 (1973). *Krauth* v. *Geller*, 31 N.J. 270 (1960).[8] In *Mounsey* v. *Ellard, supra,* the plaintiff was a police officer who was injured after falling on ice on the defendant's premises while serving a summons. Instead of labeling the officer as a licensee or invitee, the court held that all lawful visitors are owed a common duty of reasonable care. *Id.* at 707. Juries would continue to be guided by the principles "which have always governed personal negligence." *Id.* at 708. "[T]he foreseeability of the visitor's presence and the time, manner, place and surrounding circumstances of his entry remain relevant factors which will determine 'in part the likelihood of injury to him, and the extent of the interest which must be sacrificed to avoid the risk of injury.' " *Id.* at 708-09, quoting from *Smith* v. *Arbaugh's Restaurant, Inc.,* 469 F.2d 97, 101 (D.C. Cir. 1972). *Mounsey* v. *Ellard* thus abolished the original foundation of the firefighter's rule in Massachusetts. See, e.g., *England* v. *Tasker,* 129 N.H. 467, 469 (1987) ("This basis for the [firefighter's] rule is currently without justification given the modern rejection of the licensee-invitee distinction").

In the years since the 1973 decision in *Mounsey* v. *Ellard,* the rule and whatever continuing vitality it might have has not been revisited in Massachusetts. See *Griffiths* v. *Campbell,* 425 Mass. 31, 35 n.13 (1997) (negligence suit against owners of apartment building where police officer killed during drug raid; on result reached, court "need not discuss" firefighter's rule). In looking to the decisions of other jurisdictions that have recently readopted the firefighter's rule or have adopted it for the first time, we see that the doctrine of assumption of risk and/or public policy considerations provide the rationale for the rule. See *Kreski* v. *Modern Wholesale Elec. Supply Co.,* 429 Mich. 347, 360-361 (1987).[9] The rule is generally justified by the notion that police and firefighters assume the risk of injury when they undertake such employment, which from time to time will

---

[8]New Jersey abolished the firefighter's rule, effective 1994. See N.J Stat. Ann. § 2A-62A-21 (West Supp. 1999); *Boyer* v. *Anchor Disposal,* 135 N.J. 86, 87-88 (1994).

[9]See, e.g., *Calvert* v. *Garvey Elevators, Inc.,* 236 Kan. at 576 (public policy, not assumption of risk, justifies rule); *England* v. *Trasker,* 129 N.H. at 471 (public policy concerns justify rule); *Mignone* v. *Fieldcrest Mills,* 556 A.2d at 39 (both primary assumption of risk and public policy concerns justify rule). However, several jurisdictions retain a premises liability rationale. See *Rogers* v. *Cato Oil & Grease Co.,* 396 P.2d 1000 (Okla. 1964); *Petus* v. *Detsco, Inc.,* 820 S.W.2d 38, 40 (Tex. App. 1991).

require that they function as rescuers. In these jurisdictions, the rule serves to immunize the citizen whose ordinary negligence occasioned the presence of the firefighter or police officer. *Armstrong* v. *Mailand*, 284 N.W.2d 343, 350 (Minn. 1979).[10] *Migdal* v. *Stamp*, 132 N.H. 171, 175 (1989). Prosser & Keeton, Torts § 61, at 431.[11]

Primary assumption of risk "involves a circumstance where the plaintiff agrees in advance to relieve the defendant of a duty of care owed the plaintiff." *Kreski* v. *Modern Wholesale Elec. Supply Co.*, 429 Mich. at 362.[12] Thus, "[a] fireman assumes, in a primary sense, all risks incident to his firefighting activities." *Armstrong* v. *Mailand*, 284 N.W.2d at 349.[13] Nonetheless, firefighters and police officers only assume those risks which are known or can reasonably be anticipated to arise in the dangerous situations that their employment requires them to encounter. *Aetna Cas. & Sur. Co.* v. *Vierra*, 619 A.2d 436, 438 (R.I. 1993).[14]

The public policy justification rests on the rationale that firefighters and police officers are compensated for assuming the risk of injury. Numerous jurisdictions have observed that police and firefighters are paid to confront hazards that require their assistance, are trained at public expense and receive workers' compensation and disability benefits for their injuries. See *Neighbarger* v. *Irwin Indus., Inc.*, 8 Cal. 4th 532, 546-547 (1994) (rule justified by public nature of firefighter services and relationship with public); *Kreski* v. *Modern Wholesale Elec.*

---

[10]Minnesota has abolished the firefighter's rule, effective 1991. See Minn. Stat. Ann. § 604.06 (West Supp. 2000).

[11]Several courts applying the firefighter's rule have held that other types of professional rescuers are not barred by the rule. See *Roberts* v. *Vaughn*, 459 Mich. 282, 289-290 (1998) (court declined to extend rule to volunteer firefighters); *Krause* v. *United States Truck Co.*, 787 S.W.2d 708, 713 (Mo. 1990) (firefighter's rule does not apply to ambulance attendant who responded to emergency scene due to negligence of others).

[12]Primary assumption is thus distinguished from "secondary" assumption of the risk. The affirmative defense of secondary assumption of the risk has been abolished by statute in Massachusetts. See G. L. c. 231, § 85.

[13]Given our determination, *supra*, that an individual is not disqualified as a rescuer due to his or her status as an employee, it is doubtful that this rationale would apply in Massachusetts.

[14]Notably, a number of jurisdictions that have adopted the firefighter's rule have carved out exceptions for independent acts, intentional acts, and wilful, wanton, or reckless conduct in order to mitigate the harshness of the rule. *Labrie* v. *Pace Membership Warehouse, Inc.*, 678 A.2d 867, 869-870 (R.I. 1996).

*Supply Co.*, 429 Mich. at 372 (safety officers employed, trained, and paid to confront dangerous situations); *Pearson* v. *Canada Contr. Co.*, 232 Va. 177, 184 (1986) (injuries compensable through workers' compensation).

Other jurisdictions, albeit a minority, have rejected the firefighter's rule. See *Banyai* v. *Arruda*, 799 P.2d 441, 443 (Colo. Ct. App. 1990) (rule is unwarranted departure from the general duty to exercise due care for the safety of others); *Christensen* v. *Murphy*, 296 Or. 610, 619-620 (1984) (public policy does not justify rule); *Mull* v. *Kerstetter*, 540 A.2d 951, 954 (Pa. Super. 1988) (rejecting rule's notion that firefighters assume risk of duty as matter of law; principles of negligence to be applied to firefighter's claim). Other States have rejected the rule by statute. See Fla. Stat. Ann. § 112.182 (West 1992) (effective 1990, rule changes status of police and firefighters to invitees and only applies to suits against property owners); Minn. Stat. Ann. § 604.06 (West Supp. 2000) (effective 1991); N.J. Stat. Ann. § 2A-62A-21 (West Supp. 1999) (effective 1994). Both the Minnesota and New Jersey statutes overturned their jurisdictions' common-law firefighter's rule. The Oregon court in *Christenson* v. *Murphy*, *supra*, provided the following justification for its rejection of the rule: "[b]y denying a public safety officer recovery from a negligent tortfeasor, the officer is not directed to recover his damages from the general public; rather the officer is totally precluded from recovering these damages from anyone. Contrast this with other public employees who are injured when confronting dangers on their jobs. The latter can recover workers' compensation and salary benefits from the public, but are also allowed additional tort damages from the third-party tortfeasors. Under the 'fireman's rule' the injured public safety officer must bear a loss which other public employees are not required to bear." 296 Or. at 620 (footnote omitted).

Primary assumption of risk and public policy considerations, then, provide the modern foundation for the firefighter's rule in many jurisdictions. In Massachusetts, however, we must also consider that there are two statutes, enacted after *Mounsey*, that grant police officers the right to file suit against alleged tortfeasors such as Medeiros. The Legislature has thereby expressly chosen not to immunize such individuals from suits in tort. We think this consideration decisive, and it constrains us to conclude that the firefighter's rule has no continuing vitality in Mas-

sachusetts. To conclude otherwise would contravene legislative intent.

In Massachusetts, police officers are excluded from the workers' compensation statutes, G. L. c. 152, § 69, but instead receive injury-related benefits under similar statutes. They receive leave with pay under G. L. c. 41, § 111F, and payment for their medical expenses under G. L. c. 41, § 100. See *Eyssi v. Lawrence*, 416 Mass. 194, 198 (1993).

Sections 100 and 111F of c. 41 expressly permit injured police officers and their municipal employers to recover damages from intentional and negligent tortfeasors, with the injured employee first reimbursing the municipality for its expenses.[15] The relevant provisions of both §§ 100 and 111F were passed in 1977,

---

[15]Section 100 states that "[w]here the injury for which any payment is made under the provisions of this section by a city, town or fire or water district for reasonable hospital, medical . . . and related expenses . . . *was caused under circumstances creating a legal liability in some person to pay damages in respect thereof, either the person so injured or the city, town or fire or water district making such payment may proceed to enforce the liability of such person in any court of competent jurisdiction.* The sum recovered shall be for the benefit of the city, town or fire or water district making such payment, unless the sum is greater than the payment, in the event the excess shall be retained by or paid to the person so injured. . . .

"Whoever intentionally or negligently injures a firefighter or police officer for which he is paid indemnification under this section shall be liable in tort to the city, town or fire or water district for the amount of indemnification so paid." G. L. c. 41, § 100, as inserted by St. 1977, c. 646, § 1. (Emphasis added.)

Section 111F similarly states that "[w]here the injury causing the incapacity of a firefighter or police officer for which he is granted a leave without loss of pay and is paid compensation in accordance with the provisions of this section, *was caused under circumstances creating a legal liability in some person to pay damages in respect thereof, either the person so injured or the city, town or fire or water district paying such compensation may proceed to enforce the liability of such person in any court of competent jurisdiction.* The sum recovered shall be for the benefit of the city, town or fire or water district paying such compensation, unless the sum is greater than the compensation paid to the person so injured, in which event the excess shall be retained by or paid to the person so injured . . . .

"Whoever intentionally or negligently injures a firefighter or police officer for which he is granted a leave without loss of pay . . . shall be liable in tort to the city, town or fire or water district paying such compensation for all costs incurred . . . in replacing such injured police officer or firefighter which are in excess of the amount of compensation so paid." G. L. c. 41, § 111F, as inserted by St. 1977, c. 646, § 2. (Emphasis added.)

thereby filling the gap left by *Mounsey* v. *Ellard*'s 1973 aboli-
tion of the original rationale for the firefighter's rule. See G. L.
c. 41, §§ 100, 111F. "Under the second paragraph of § 111F,
an injured party or the municipal employer may recover against
a negligent third party who was the cause of the injury to the
police officer, the first proceeds of recovery to be applied to
whatever the municipality has paid the injured officer." *Gon-
salves* v. *Commonwealth*, 27 Mass. App. Ct. 606, 609 (1989).
"The statute [c. 41, § 111F,] only subrogates the town to the
employee's rights against the tortfeasor to the extent of the
compensation the officer receives from the tortfeasor." *Wincek*
v. *West Springfield*, 399 Mass. 700, 702 (1987).

We must give due deference to the underlying legislative
intent as expressed by the plain language of the statute. *Boswell*
v. *Zephyr Lines, Inc.*, 414 Mass. 241, 247 (1993). Absent explicit
statutory language, we cannot construe §§ 100 and 111F as
abrogating the common law right of police officers such as
Hopkins to pursue a negligence action. "A statute is not to be
interpreted as effecting a material change in or a repeal of the
common law unless the intent to do so is clearly expressed." *Ri-
ley* v. *Davison Constr. Co.*, 381 Mass. 432, 438 (1980), quoting
from *Pineo* v. *White*, 320 Mass. 487, 491 (1946). See *Eyssi* v.
*Lawrence*, 416 Mass. at 200 (had Legislature intended the provi-
sions of c. 41, §§ 100 or 111F, to abrogate common law rights
of police officer's spouse or child's loss of consortium actions,
it would have done so explicitly). Furthermore, "[i]t is not our
place to extend such immunity where the Legislature has chosen
not to do so." *Foley* v. *Kibrick*, 12 Mass. App. Ct. 382, 388
(1981) (police officer whose negligence allegedly injured fellow
officer not immune from suit; no comparable provision in c. 41
analogous to immunity of coemployees in c. 152 of workers'
compensation act).[16]

Because Hopkins qualifies as a rescuer, and there is no ex-

---

[16]The Rhode Island Supreme Court addressed a similar subrogation statute
for firefighters in *Mignone* v. *Fieldcrest Mills*, 556 A.2d at 40. Section 45-19-
1.1 of the Rhode Island General Laws states that "the employee may take
proceedings, against that person to recover damages, and the employee shall
be entitled to receive both damages and compensation." However, the court
held that the statute's "plainly expressed language" did not create a cause of
action that was not already recognized at common law. *Ibid.* The court's
analysis concluded that Rhode Island's common law did not recognize a cause
of action permitting firefighters to sue for reasonably anticipated risks of fire-
fighting, and therefore the statute only set forth a provision for reimbursement

ception to the rescue doctrine, we turn to the matter of whether Hopkins was harmed by the trial judge's refusal to instruct the jury concerning the duty owed to a rescuer. We review objections to jury instructions to determine if there was any error, and, if so, whether the error affected the substantial rights of the objecting party. *Coca-Cola Bottling Co. of Cape Cod* v. *Weston & Sampson Engrs., Inc.*, 45 Mass. App. Ct. 120, 123-124 (1998), citing Mass.R.Civ.P. 61, 365 Mass. 828 (1974). In other words, we determine whether or not the error was harmless. See *McIntyre* v. *Boston Redev. Authy.*, 33 Mass. App. Ct. 901, 903 (1992), citing Mass.R.Civ.P. 61.

The trial judge's refusal to instruct the jury as requested by Hopkins was not harmless error. The rescue doctrine was directly relevant to whether Medeiros owed Hopkins a duty, the threshold issue in this case. "While a judge has significant latitude in framing jury instructions, an objection does lie if a significant matter is not dealt with at all." *Comeau* v. *Currier*, 35 Mass. App. Ct. 109, 111-112 (1993). "It is the duty of the judge . . . to give full, fair, correct and clear instructions as to the principles of law governing all the essential issues presented, so that the jury may understand their duty and be enabled to perform it intelligently." *Fein* v. *Kahan*, 36 Mass. App. Ct. 967, 968 (1994), quoting from *Fenton* v. *Bryan*, 33 Mass. App. Ct. 688, 693 (1992). "Every possible correct statement of law need not . . . be included in jury instructions if the instructions as given are correct and touch on the fundamental elements of the claim." *Kobayashi* v. *Orion Ventures, Inc.*, 42 Mass. App. Ct. 492, 503 (1997). But here, the judge's instructions failed even to mention a key principle of the law governing duty. See *Petras* v. *Storm*, 18 Mass. App. Ct. 330, 335-336 (1984) (not harmless error to omit instruction on important principle of law governing negligence).

Because of their answers to the special questions, we know that the jury's verdict was based on their decision that Medeiros did not owe a duty to Hopkins. Substantial evidence was presented at trial to warrant instructions concerning the rescue doctrine. Given this evidence, the judge should not have left the jury uninformed as to the law concerning the duty owed to a rescuer. See *Comeau* v. *Currier*, 35 Mass. App. Ct. at 112 (defendants' testimony provided jury with substantial evidence

in favor of the political subdivision paying compensation benefits to the firefighter. *Ibid.*

of provocation to mitigate damages; omission of provocation instruction could not be considered harmless error); *Petras* v. *Storm*, 18 Mass. App. Ct. at 335 (sufficient evidence for jury to find defendant was under the influence before causing accident; not harmless error for trial judge to refuse to give instruction guiding jury as to legal consequences of such a finding).

"The primary purpose of instructions to a jury is to assist them in the discharge of their responsibility for finding the facts in issue and then in applying to the facts found the applicable rules of law to enable them to render a proper verdict." *Pfeiffer* v. *Salas*, 360 Mass. 93, 100 (1971). Here, the jury did not have the benefit of the applicable law before them. Therefore, the failure of the trial judge to instruct the jury on the duty owed to a rescuer was not harmless error, and a new trial is warranted.

3. *Prior conviction.* As a result of Medeiros's conduct on the night of October 27, 1989, Medeiros was charged with disorderly conduct in violation of G. L. c. 272, § 53, and he admitted to sufficient facts to warrant a finding of guilty. Hopkins argues that the trial judge erred in failing to allow the conviction in evidence as the functional equivalent of a guilty plea, and that he is entitled to a new trial on this basis. We discuss the issue because it may arise at a new trial.

After Officer Bonaiuto testified that he charged Medeiros with disorderly conduct, Hopkins put in evidence a certified copy of the conviction, which indicated that Medeiros admitted to sufficient facts.[17] The judge then instructed the jury that an admission to sufficient facts is not the same as a guilty plea and suggested reasons why a criminal defendant might admit to sufficient facts.[18] Hopkins objected, arguing that pleading to sufficient facts is the functional equivalent of pleading guilty, and

---

[17]Although there was also a check mark next to "guilty" in the plea section on the conviction, neither party argues on appeal that Medeiros pleaded guilty.

[18]After the record of conviction was entered in evidence, the judge instructed the jury:

"Now, ladies and gentlemen, let me explain. . . . Apparently, Mr. Medeiros was charged in the Peabody District Court with the offense of being a disorderly person. And this exhibit . . . is a copy of the criminal complaint in this case. Apparently, also, at some later point, he admitted to sufficient facts of that charge.

"An admission to sufficient facts is not the same as a plea of guilty. It is an admission on the part of a criminal defendant that there are sufficient facts that could have been presented to a jury or to a judge upon

that the judge's instructions unfairly minimized the significance of Medeiros's conviction. Later in the trial, Hopkins cross-examined Medeiros about his actions on the night of October 29. The judge restricted Hopkins's questioning about Medeiros's colloquy with the judge when he admitted to sufficient facts, but allowed cross-examination about Medeiros's deposition testimony that he pleaded guilty to disorderly conduct. Hopkins again objected.

"An admission to sufficient facts may be introduced against the defendant in a subsequently litigated civil suit arising out of the same incident on the theory that the proceeding was the functional equivalent of a guilty plea, with the same degree of finality." Flannery, Saris, Sosman, & Carney, Massachusetts Evidence: A Courtroom Reference § 3.5.1(b) (MCLE 1999), citing to *Davis* v. *Allard*, 37 Mass. App. Ct. 508, 511 (1994), *S.C.*, 420 Mass. 739 (1995). The evidence of Medeiros's admission to sufficient facts was admissible as an admission of a party opponent. As with a guilty plea, because an admission to sufficient facts is evidentiary, and not conclusive as to the facts admitted, the defendant may be questioned about the reasons he entered it. *Aetna Cas. & Sur. Co.* v. *Niziolek*, 395 Mass. 737, 747 (1985). *Flood* v. *Southland Corp.*, 33 Mass. App. Ct. 287, 293-96 (1992), *S.C.*, 416 Mass. 62, 70-72 (1993). The trial judge's handling of the conviction, particularly the contemporaneous limiting instructions which minimized the conviction and the significant restrictions he placed on questioning the defendant about it, was not satisfactory and should not be replicated at any new trial.

4. *Instruction on violation of statute as evidence of negligence.* When the evidence of Medeiros's conviction was admitted, the judge read to the jury the statutory definition of disorderly

which that jury or judge could have found him guilty if it chose to do so. It is not, however, a plea of guilty. It is an admission to sufficient facts.

"There are many reasons why a person may want to admit to sufficient facts. He or she may want to admit to sufficient facts because, indeed, he or she were guilty of the charge. He or she may admit to sufficient facts for any other number of reasons; that it is the most efficient way of disposing of a criminal case, that he or she wishes to minimize the ultimate sentence that they might receive. It, to some extent, is a negotiated plea in which a person admits to sufficient facts and the case is thus disposed of."

conduct, G. L. c. 272, § 53, the only statute discussed at trial. Both parties agree that the final jury instructions correctly stated the general rule that a violation of a statute is evidence of negligence on the part of the violator as to all the consequences the statute was intended to prevent. See *Perry* v. *Medeiros*, 369 Mass. 836, 841 (1976); *Resendes* v. *Boston Edison Co.*, 38 Mass. App. Ct. 344 (1995). However, Hopkins requested that the judge instruct the jury in his final instructions on the content or purpose of statutes at issue, and now argues that the judge erred in failing to do so.[19] We address this issue because it, too, may arise at retrial.

"A judge is under no obligation to charge the jury in the specific language requested by a party, so long as the charge is complete and correct in its essentials." *Drivas* v. *Barnett*, 24 Mass. App. Ct. 750, 754 (1987), citing *Van Dyke* v. *Bixby*, 388 Mass. 663, 670 (1983). Considering that the final instructions were not inaccurate, and that the trial judge read the definition of disorderly conduct when the evidence was admitted, the instructions were complete and correct. The jury were thus able to "understand their duty . . . and perform it intelligently." *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.)*, 427 Mass. 1, 14 (1998), quoting from *Maxwell* v. *Massachusetts Title Ins. Co.*, 206 Mass. 197, 200 (1910). Since there was no evidence on the point at trial, moreover, the judge did not err in declining to give instructions on aiding or assisting a prisoner attempting to escape from the lawful custody of a police officer. *Ibid.*

*Judgment reversed.*

---

[19]In his final charge, the judge instructed the jury: "[A] violation of a statute or regulation is evidence of negligence on the part of the violator as to all the consequences the statute or regulation was intended to prevent. If you find in this case that the defendant violated a criminal statute, you may consider that violation as evidence of negligence if you also find that the statute at question was intended to prevent the specific harm which occurred." The judge then moved on to the next point in his instructions without telling the jury the substance of any of the specific criminal statutes the plaintiff alleged Medeiros violated.

APPENDIX.

*Requested Jury Instructions:*

"2A. The defendant is liable for an invasion of an interest of another, if the conduct of the actor is negligent with respect to the other, or a class of persons within which he is included. This means that the duty of a person to refrain from negligent conduct does not extend to persons beyond the zone of foreseeable risks created by the defendant's negligent conduct.

"The law specifically recognizes as within the class of foreseeable plaintiffs persons intervening in response to the danger created by the defendant's conduct.

> 'Therefore, if the actor's conduct is such as to involve an unreasonable risk of injury to the person or property of a third person, or to the actor himself, he must as a reasonable man expect that others, although not otherwise imperiled by his conduct, will bring themselves within the reach of its harmful effect in their efforts to protect the interests so endangered. To this extent the fact that the actor's conduct is negligent towards the third person makes it negligent also to others who are in that person's vicinity, although, but for its tendency to imperil the third person and so draw others into reach of its harmful potentialities, it would not be negligent toward them.'

Restatement (Second) Torts §§ 281, 290, comment 1. See also Restatement (Second) Torts § 294 ([i]n determining whether the conduct of the actor is negligent toward another, the fact that it involves an unreasonable risk of harm to a third person may in certain situations be considered).

"18. If the [d]efendant's negligent or reckless conduct threatens harm to [a] person, property or public safety the normal efforts of a third person to avert the threatened harm do not break the chain of causation between the [d]efendant's negligence and resulting harm. Restatement (Second) Torts § 445. *Edgarton* v. *H.P. Welch Co.*, 321 Mass. 603, 614 [1947]. *D'Angeli's Case*, 369 Mass. 812 [1976].

"A police officer is under a duty imposed by law to suppress all disturbances, riots and disorder. G. L. c. 41, § 98. G. L. c. 269, §§ 1, 2.

"19A. The intervention of a force which is a normal consequence of a situation created by wrongdoer's negligent conduct does not break the chain of causation between the wrongdoer's misconduct and harm which the wrongdoer's conduct had been a substantial factor in bringing about. Restatement (Second) Torts § 443. *Edgarton* v. *H.P. Welch Co.*, 321 Mass. 602, 614 [1947].

"B. This rule applies equally to intervening acts done by the person who is harmed. It is *not* necessary that the act which is done by the person harmed be reasonable. It is enough that the act is a normal consequence of the situation created by the wrongdoer's negligence. Restatement (Second) Torts § 443, [c]omment A.

"C. The word 'normal' is not limited to what is usual, customary, foresee-

able, or to be expected. It means simply not abnormal or extraordinary. It means that you the jury looking at the matter after the event, and therefore, knowing the situation which existed when the plaintiff intervened, do not regard his interventions so extraordinary as to fall outside the class of normal events. Restatement (Second) Torts § 443, [c]omment B."